(No. 99815)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAMES S. JOHNSON, Appellant.

*Opinion filed December 15, 2005.—Rehearing denied February 2, 2006.*

126

FREEMAN, J., joined by KILBRIDE, J., dissenting.
FREEMAN, J., joined by KILBRIDE, J., also dissenting on denial of rehearing.

Gregory L. Ryan, of Urbana, for appellant.

Lisa Madigan, Attorney General, of Springfield, and John C. Piland, State's Attorney, of Urbana (Gary Feinerman, Solicitor General, and Linda D. Woloshin and Katherine D. Saunders, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

In December 2003, defendant James "Steven" Johnson was tried before a jury in the circuit court of Champaign County for the offense of driving under the influence of alcohol. 625 ILCS 5/11—501(a)(2) (West 2002). During opening and closing argument, the prosecutor told the jury that defendant, by refusing to take a breath test, had failed to prove to the arresting officer that he was not guilty of the charged offense. The jury found defendant guilty and, in a divided opinion, the appellate court upheld the conviction. 353 Ill. App. 3d 954. We granted defendant's petition for leave to appeal and now affirm the judgment of the appellate court.

## BACKGROUND

The facts of this case are undisputed. At about 4 p.m., on Wednesday, April 30, 2003, defendant met with a group of friends at the Lake of the Woods Golf Course in Mahomet, Illinois, for his weekly golf game. One of defendant's golfing friends lived in a home situated along the golf course, near the sixth hole. Around 5 p.m.

defendant reached the sixth hole and, as was his habit, walked to this friend's home, where he made himself a mixed drink of rum and cola, which he then took with him on the course. The golf game finished sometime around 8 p.m. and defendant then drove to a restaurant and bar called Hide-Away in the Woods (the Hide-Away), where he and his golfing friends customarily met for postgame food and drinks and to "tally up." Defendant stayed at the Hide-Away until about 9:30 p.m. and consumed two more mixed drinks of rum and cola while he was there. Shortly thereafter, defendant was stopped by an officer of the Mahomet police department and charged with driving under the influence of alcohol (DUI), in violation of section 11—501(a)(2) of the Illinois Vehicle Code (625 ILCS 5/11—501(a)(2) (West 2002)).

Defendant contested the charge and a jury trial was held. At trial, the prosecutor made an opening statement in which he outlined the evidence he planned to present. At the end of this statement, the prosecutor made the following remarks:

"Finally, I believe you're going to hear that Mr. Johnson was given the opportunity to prove to the officer that he was not overly impaired by being offered to take what is called a breath alcohol test to determine how much alcohol was on his breath at the time, yet the defendant failed to do so.

I believe at the end of this we'll have met our burden and proved to you beyond a reasonable doubt that Mr. Johnson was under the influence of alcohol and was driving a motor vehicle in Champaign County at that time, and that influence of alcohol impaired his ability to do so."

Defense counsel made no objection to anything the prosecutor said. After defendant gave his own opening statement, the State presented its only witness, Mahomet Police Officer David Parsons. Officer Parsons testified that, on April 30, 2003, at approximately 9:45 p.m., he activated his lights and initiated a traffic stop after he witnessed the truck defendant was driving move past the

center line into the oncoming lane on three occasions in a 10- to 15-second period. Defendant responded immediately, appropriately pulling to the side of the road. Officer Parsons then approached the driver's side of defendant's vehicle and asked defendant for his license and insurance card. Officer Parsons testified that he immediately smelled a strong odor of alcohol, noticed that defendant's eyes were bloodshot, and detected a slight slurring of speech. In addition, Officer Parsons noted that defendant gave him a registration card instead of an insurance card, as requested, although defendant quickly complied once the error was pointed out. Officer Parsons testified that he asked defendant if he had been drinking and defendant admitted that he had "a couple."

Officer Parsons testified that he asked defendant to exit his vehicle to take some field sobriety tests. The first test he had defendant take was the "walk and turn" test. Officer Parsons testified that he told defendant to listen carefully as he explained the test and to watch closely as he demonstrated its execution. After he explained and demonstrated the test, defendant attempted it. Office Parsons testified that defendant did not follow the instructions—defendant walked "normally" instead of heel-to-toe, as instructed. Furthermore, defendant did not turn on one foot or keep his arms at his sides. According to Officer Parsons, the test permits a person to raise his arms only 6 inches, but defendant lifted his arms about 14 inches away from his body in order to maintain his balance. For the above reasons, the officer regarded defendant's performance a failure.

Officer Parsons then gave defendant a second test, the "one-leg stand" test. This test requires the subject to stand on one leg, with arms to the side, for the count of 30 seconds. After hearing the instructions and watching Officer Parsons demonstrate the test, defendant attempted this test but put his foot down after only eight

seconds. Officer Parsons also noted that defendant swayed and lifted his arms to keep his balance. Accordingly, defendant's performance on the second test was deemed a failure as well.

Officer Parsons testified that, because of his observation of defendant's improper lane usage, because defendant smelled strongly of alcohol, had bloodshot eyes and slightly slurred speech, and because defendant failed the two field sobriety tests, he believed defendant to be impaired by alcohol and, thus, placed defendant under arrest. Defendant was handcuffed and placed in the back of the squad car. Officer Parsons noted that defendant commented at this time that he didn't know why he was being arrested because he was not "that drunk."

Officer Parsons further testified that while they sat in the squad car waiting for a tow truck to come and impound defendant's vehicle, he asked defendant whether he would be willing to take a breath-alcohol test. He testified that, in conjunction with this request, he read to defendant the "Warning to Motorists," as required by state law. The "Warning to Motorists" was then read into the record by Officer Parsons for the benefit of the jury. Officer Parsons testified that he did not simply read the warning to defendant, he explained it to him, informing defendant that even if he "blew over point 8," that is, if he failed the test by being over the legal limit, his driver's license suspension would be for a shorter period than if he did not submit to testing at all.[1] Officer Parsons further explained that the minimum penalty for a "first offender" is three months' suspension if the driver takes the test and fails, but six months' automatic

---

[1]Officer Parsons may have misspoke, or his testimony may have been incorrectly transcribed. Section 11—501(a)(1) of the Vehicle Code prohibits a person from driving if the alcohol concentration in his or her breath is *0.08 or more,* not *0.8 or more,* as Officer Parsons' testimony seems to indicate.

suspension if the driver refuses to take the test. If the driver is not a first offender, the minimum penalty is one year's suspension if the driver takes the test and fails, but three years' automatic suspension if the driver refuses to take the test. Officer Parsons testified that defendant indicated that he understood the warning, but he declined to take the test.

Officer Parsons was thoroughly cross-examined by defense counsel. First it was established that, according to the police report, defendant was pulled over at 9:46 p.m. and his refusal to submit to the breath test occurred at 9:55, only nine minutes later. Thus, the field sobriety tests and explanation of the warning all took place in under 10 minutes. Also, Officer Parsons admitted that he asked defendant to take the test only once—while defendant was sitting, handcuffed, in the back of the police car—and he did not give defendant a copy of the warning when it was read to him. A copy of the warning was provided to defendant, as required by law, but not until nearly an hour later, when defendant was in jail. Officer Parsons also acknowledged that he had received an award one year for making more DUI arrests than anyone in his police department.

When cross-examined about his initial observations of defendant's driving, Officer Parsons admitted that defendant had not been speeding and, except for crossing over into the other lane, had operated his vehicle appropriately. Officer Parsons conceded that when defendant was driving along Oak Street, before he was stopped, there was a vehicle in front of defendant and that it was possible that defendant had been crossing into the other lane to determine whether it was safe to pass. In fact, this is what defendant told the officer when he was stopped. However, Officer Parsons insisted that on at least one occasion, defendant crossed a double yellow line, where it would have been *illegal* to pass.

Officer Parsons was also questioned extensively about the conditions under which defendant took the field sobriety tests. Officer Parsons could not remember whether, when conducting the "walk and turn" test, he used the white line on the shoulder of the road or simply asked defendant to walk straight along an "imaginary" line. At trial, all he could remember was what he put in his report—that defendant did not walk in a straight line. When it was brought to his attention that, according to the United States Department of Transportation, National Highway Traffic Safety Administration, the "walk and turn" test requires a line the suspect can see, Officer Parsons responded that he was trained that an actual line was not required. Finally, Officer Parsons admitted that he did not attempt to correct defendant when he walked at a normal gait and did not place his heel to his toe, as instructed.

On redirect, Officer Parsons agreed that there are several indicators that a person is under the influence of alcohol and that defendant did not exhibit every indicator. Nevertheless, defendant crossed the centerline three times, smelled strongly of alcohol and had bloodshot eyes, and failed the field sobriety tests. The combination of these indicators convinced Officer Parsons that defendant was impaired.

After Officer Parsons testified, the State rested its case. Defendant then presented a number of witnesses in his defense. The first witness was James Capel, the owner of the home situated along the golf course and defendant's friend for 15 years. Capel testified that on April 30, 2003, he played golf with defendant and saw defendant walk to his home to get a drink at around 5 p.m. After the game, around 8 p.m., he met up with defendant at the Hide-Away. Capel testified that he left the restaurant before defendant, at about 9 p.m., and, while at the restaurant, remembered seeing defendant

have one mixed drink. Capel also testified that, when he left, defendant was walking and talking normally. He noted that defendant normally spoke with a slight slur or mumble, sometimes making it difficult to understand him.

The next witness was Daniel Stites, who was the bartender at the Hide-Away restaurant on April 30, 2003. Daniel knew defendant well because his parents were good friends with defendant and defendant was Daniel's landlord. Daniel testified that defendant did not stay long at the restaurant that night and, as far as he could remember, defendant had one or two drinks during the time he was there. Daniel did not remember seeing defendant leave, but testified that defendant did not appear intoxicated or impaired by alcohol while he was at the restaurant.

Defendant's third witness was Jody Gordon. Jody had known defendant for about five years and her husband had a business relationship with defendant. She testified that she had attended a bowling banquet at the Hide-Away on the evening of April 30, 2003, and, at about 8:15 p.m., spoke to defendant in the bar area for a few minutes. She testified that, although she did not speak with defendant again before she left the restaurant at about 9 p.m., she noticed defendant walking around the bar speaking to other people or sitting at the other end of the bar area playing a video game. She testified that defendant "seemed fine."

The next witness was Miles Stites, Daniel's father and defendant's friend for over 40 years. Stites had been having dinner at the Hide-Away on April 30, 2003, when defendant arrived there between 8 and 8:15 p.m. Stites was typically part of defendant's golfing group but had not played that day because he was visiting his sick mother in the hospital. Defendant came over to ask him how she was doing. Stites testified that he saw defendant

get a drink at the bar and then play a video game. After the video game, defendant came back to the bar and sat down next to Stites. They left the bar together at about 9:30 p.m. Stites testified that defendant was walking and talking normally and did not appear affected by the alcohol he drank.

The last witness was defendant. With regard to April 30, 2003, defendant admitted that he had one drink while on the golf course and two more at the Hide-Away between 8 and 9:30 p.m. Defendant's testimony then turned to a discussion of the traffic stop. Two videotapes and a number of photographs of the road where Officer Parsons first saw defendant and where the traffic stop took place were identified by defendant and shown to the jury. Defendant admitted that he crossed the centerline of the road twice, but claimed he did so in an attempt to look past the vehicle in front of him to determine whether it was safe to pass. He used the videotapes to show the painted yellow lines on the road where he crossed the centerline, disputing Officer Parsons' claim that any attempted pass would have been illegal. Defendant also used the videotapes to show the degree of slope in the road near where the field sobriety tests were conducted. Defendant testified that the two drinks he had at the Hide-Away only "relaxed" him and did not interfere with his ability to function in any way.

On cross-examination, defendant admitted that, with regard to the field sobriety tests, Officer Parsons demonstrated and explained the tests, but that he did not do the test as described because "I wasn't paying that much attention exactly how he did it. I thought I understood exactly how I was supposed to do it, so it's, you know, mind and eyes." Defendant also admitted that alcohol can affect a person's perception, memory, judgment and recall. Thus, defendant admitted, because he had alcohol on April 30, 2003, and because he testified

that the alcohol "relaxed" him, the alcohol had *some* effect and it was "possible" that his recollection of the night's events were affected. Finally, defendant admitted that Officer Parsons had read him the "Warning to Motorist" and that he indicated that he understood. When it was pointed out that he refused the test knowing that he would be facing a longer suspension of his driver's license if he refused, defendant answered:

"That's not the reason. At the time I was handcuffed in the back of the car. You know, I just had two drinks. I don't know legally how the test results with just having two drinks. I wasn't going to put myself in that position so I declined to take the test. I was scared. He was not acting in my favor, I didn't feel."

The prosecutor restated the question, asking whether defendant had understood that the penalty would be greater for not taking the test. Defendant said:

"At that particular point I just wanted to—no more tests, just get it over with."

Following defendant's testimony, the prosecutor gave his closing argument. The prosecutor began by admitting that "it's pretty clear that Mr. Johnson was not falling down drunk." However, he argued that, after jury instructions, it would also be clear that all the State had to prove was that, as a result of drinking any amount of alcohol, defendant's mental and physical ability was impaired to the degree that he was not acting with reasonable care. The prosecutor suggested that he had met this burden.

At the close of his argument, the prosecutor stated:

"Officer Parsons thought that [defendant] was impaired based on his performance on the field sobriety test, based on the alcohol that he smelled, based on watching [defendant] drive, based on the fact that [defendant] gave him the wrong card initially, gave him a registration card instead of an insurance card.

He said, you know what? I am going to give you one more chance to prove that you're not guilty of this offence.

Take a breath test. You're aware of the penalties that might result with this test and as a result of not taking it at all.

You heard Mr. Johnson testify. He understood it. He knew what he was doing. He refused. He didn't want to take the risk. He took the stiffest penalty right off the bat. He wouldn't take the chance to prove it once and for all."

Defense counsel made no objections to the above remarks and in rebuttal closing argument, the prosecutor never made another reference to defendant's refusal to take the breath test.

After being instructed, the jury deliberated for about four hours. It returned a verdict of guilty to the charge of driving while under the influence of alcohol. Defendant filed a posttrial motion seeking judgment notwithstanding the verdict (*n.o.v.*) or, in the alternative, a new trial. At the hearing on the motion, defendant argued that the evidence was insufficient to support the guilty verdict as a matter of law. In the alternative, defendant argued that, because the evidence was so closely balanced, the prosecutor's improper argument confused the jurors and, thus, tipped the balance against the defendant. Defense counsel admitted that the court could find the error procedurally defaulted because he had not "caught" the error and failed to lodge an objection at trial. Nevertheless, he argued that the matter should be reviewed as plain error.

In response, the prosecutor agreed that the issue was procedurally defaulted. However, he also argued that, if the court considered the issue on its merits, the court should find that the remarks, though admittedly erroneous, were harmless. The prosecutor urged the court to view the improper remarks in the context of the entire argument and argued that, when viewed in this context, it was clear that the remarks could not have affected the verdict.

The trial court denied defendant's posttrial motion. The court agreed that the prosecutor's remarks were er-

ror. Indeed, the court found them to be an error of "[c]onstitutional magnitude." The trial court stated that, had an objection been made, the error would have been cured by a strongly worded admonishment to the jury. The court also agreed that the evidence was "closely balanced." Nevertheless, the trial judge, admitting that he was "by no means confident of [his] position," held: "I am not convinced that a fair trial was so subverted by the comments as to require the Court to grant the posttrial motion." The judge noted that the error was not "overly emphasized," having been mentioned in a couple of lines. Accordingly, defendant's posttrial motion was denied. Defendant appealed.

As noted earlier, the appellate court reviewed the matter and, in a divided opinion, upheld the verdict. First, the court rejected defendant's claim that the evidence was insufficient, holding that, although defendant had proffered reasonable explanations for most of his actions, his evidence "was not so strong that we can conclude that no rational trier of fact could have convicted defendant in this case." Next, the reviewing court held that the prosecution's opening and closing remarks were not plain error. In fact, the appellate court held that the prosecutor's remarks were not error at all. The court held that "evidence of a defendant's refusal to take a breath test is relevant and admissible" and the prosecutor's statements "drew a legitimate inference from the evidence that was properly admitted during the trial." 353 Ill. App. 3d at 958. One justice dissented. He believed that the prosecutor's remarks were error and sufficiently prejudicial to warrant a new trial.

Defendant petitioned this court for leave to appeal, which we granted. 177 Ill. 2d R. 315(a).

## ANALYSIS

In the appeal to this court, two issues are raised: (1) whether defendant is entitled to a new trial because com-

ments made by the prosecutor in opening and closing argument constitute plain error, and (2) whether defendant is entitled to a new trial because his trial counsel's failure to object to the prosecutor's comments constitutes ineffective assistance of counsel.

With respect to the first issue, defendant argues that the appellate court erred when it held that it was not improper for the prosecutor to have told the jury, in his opening statement and closing argument, that defendant failed to prove his innocence to the police officer by refusing to take the breath test. Defendant contends that the prosecutor's remarks created the inference that he had a duty to prove he own innocence and, thus, shifted the burden of proof to him. Defendant argues that reversal is required, despite his counsel's failure to object, because the evidence was closely balanced and the error denied him a fair trial.

Similarly, in his second issue, defendant contends that, because the prosecutor's remarks shifted the burden of proof and denied him a fair trial, he was unfairly prejudiced by his counsel's failure to object to the remarks. Accordingly, defendant contends he received ineffective assistance of counsel.

Initially, we note that because defendant did not object to the prosecutor's remarks at trial, any issue concerning the propriety of the prosecutor's comments has been procedurally defaulted. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (both a trial objection and a written posttrial motion raising the issue are necessary to preserve an issue for review). However, as this court recently noted in *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005):

"[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence."

In the case at bar, defendant contends that review for plain error, pursuant to the plain-error doctrine, is warranted because the evidence at trial was closely balanced. We agree that, at trial, defendant presented evidence which tended to refute much of the State's evidence showing defendant was under the influence of alcohol. Thus, we agree that review under the first prong of the plain-error doctrine is warranted, despite the procedural default. Accordingly, we shall go on to consider whether the prosecutor's remarks resulted in plain error, that is, whether the comments were sufficiently prejudicial to warrant reversal. *Herron*, 215 Ill. 2d at 187 ("[i]n the first instance, the defendant must prove 'prejudicial error' "); *People v. Sims*, 192 Ill. 2d 592, 623 (2000) (plain errors are reversible errors).

One issue is at the core of both of defendant's claims—whether the prosecutor's remarks were, in fact, improper. Clearly, there can be no plain error if there is no error (*Herron*, 215 Ill. 2d at 184; *Sims*, 192 Ill. 2d at 621) and, since an attorney's performance is ineffective only if it falls below an objective standard of reasonableness (*People v. Evans*, 209 Ill. 2d 194, 220 (2004)), counsel cannot be deficient if he fails to object to remarks which are not improper. Thus, before we can determine whether there was plain error or ineffective assistance of counsel, we must first decide whether there was error.

As noted above, the appellate court majority found that the prosecutor's remarks were not error but, rather, legitimate inferences drawn from properly admitted evidence. 353 Ill. App. 3d at 958. One justice disagreed; he found the remarks to be error and believed that the majority's ruling "sets a dangerous precedent." 353 Ill. App. 3d at 960 (Turner, J., dissenting). The dissenting justice was concerned that, if such remarks were held to be proper, prosecutors would be encouraged to argue, in all cases in which a driver refuses to submit to testing,

that the driver failed to prove his innocence to the police officer who offered the test, thereby subverting the bedrock principle that the State has the burden to prove guilt beyond a reasonable doubt and that a defendant is never bound to prove himself innocent. 353 Ill. App. 3d at 959-60.

We agree with the prosecutor, the trial court judge, and the dissenting appellate justice and find that the remarks made in opening and closing argument, which suggest that defendant failed to prove his innocence to the police officer by failing to take the breath test, were improper and that, as a result, error occurred. It is true, as the appellate court held, that evidence of a person's refusal to take a test designed to determine the person's blood-alcohol content is admissible and may be used to argue the defendant's consciousness of guilt. See *People v. Rolfingsmeyer*, 101 Ill. 2d 137, 141 (1984) (because a driver has no constitutional right to refuse a breath test and may be compelled by the State to take such a test, evidence of the driver's refusal to take such a test does not violate the self-incrimination privilege and may properly be admitted at trial); *People v. Garriott*, 253 Ill. App. 3d 1048, 1052 (1993) (section 11—501.2(c) of the Code provides that evidence of a refusal shall be admissible at trial of a DUI and, thus, the legislature has determined that evidence of such a refusal is relevant as circumstantial evidence of the driver's consciousness of guilt). However, we believe, as did the dissenting appellate justice, that the argument complained of in the case at bar goes beyond such legitimate purpose and "blur[s] the distinction between the defendant's state of mind and the State's burden of proof and thus should not be permitted." 353 Ill. App. 3d at 960. Moreover, like the trial judge in the case at bar, we feel strongly that the argument here, which implied that defendant might have proven his innocence by submitting to a breath test, is in

conflict with the constitutional principle that a defendant is innocent until proven guilty. This type of argument should not be countenanced.

That having been said, our finding that the prosecutor's remarks were improper does not end our inquiry. An error, even one affecting constitutional rights, does not necessitate reversal in every instance. " '[T]here may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless ***.' " (Emphasis omitted.) *Girot v. Keith*, 212 Ill. 2d 372, 382 (2004), quoting *Chapman v. California*, 386 U.S. 18, 22, 17 L. Ed. 2d 705, 709, 87 S. Ct. 824, 827 (1967). The question, then, is whether, in the case at bar, the improper remarks made in opening and closing argument were sufficiently prejudicial so as to require reversal.

Addressing this question, we recall that any statement must be considered in the context of the closing argument as a whole (*People v. Evans*, 209 Ill. 2d 194, 225 (2004)), and "[a] reviewing court will find reversible error based upon improper comments during closing arguments only 'if a defendant can identify remarks of the prosecutor that were both improper and so prejudicial that "real justice [was] denied or that the verdict of the jury may have resulted from the error" ' " (*Evans*, 209 Ill. 2d at 225, quoting *People v. Jones*, 156 Ill. 2d 225, 247-48 (1993), quoting *People v. Yates*, 98 Ill. 2d 502, 533 (1983)).

We are mindful, too, that it is defendant who bears the burden of persuasion on this issue. As noted in *People v. Thurow*, 203 Ill. 2d 352 (2003), plain-error analysis requires the same kind of inquiry as does harmless-error review. In both instances the crucial issue is whether the error is so substantial that it undermines our confidence in the jury verdict. But where the defendant has made a

timely objection and the reviewing court must decide whether the preserved error was harmless, the State " 'bears the burden of persuasion with respect to prejudice.' " *Thurow*, 203 Ill. 2d at 363, quoting *United States v. Olano*, 507 U.S. 725, 734, 123 L. Ed. 2d 508, 520, 113 S. Ct. 1770, 1778 (1993). On the other hand, where, as here, the defendant has failed to make a timely objection, a plain-error analysis applies and " '[i]t is the defendant rather than the [State] who bears the burden of persuasion with respect to prejudice.' " *Thurow*, 203 Ill. 2d at 363, quoting *Olano*, 507 U.S. at 734, 123 L. Ed. 2d at 520, 113 S. Ct. at 1778.

In the case at bar, the State contends that defendant has not met his burden of persuasion because the prosecutor's improper comments, when viewed in the context of the arguments as a whole, did not deprive defendant of a fair trial. We agree.

The prosecutor did not rely on the fact that defendant did not take the breath test to prove his case against defendant. The State's witness, Officer Parsons, testified that he stopped defendant after he observed defendant move into the oncoming lane on three occasions and, after stopping defendant, he noted that defendant smelled of alcohol, had slightly slurred speech, failed to produce his insurance card when first requested, and failed two sobriety tests. Defendant admitted, and his own trial witnesses confirmed, that defendant had at least two alcoholic drinks shortly before his arrest. In addition, when cross-examined at trial, defendant admitted that the alcohol he had consumed on the night in question had "relaxed" him and, for that reason, his own recall of the night could have been affected.

In closing argument the prosecutor repeated what he had said in his opening argument, *i.e.*, that defendant had an opportunity to prove his innocence by taking a breath test, but refused. This comment, though improper,

was brief, amounting to only a few lines of the 15-page transcribed argument. Moreover, the notion that defendant "failed to prove his innocence" was not stressed. The prosecutor began and ended his closing argument by explaining to the jury *the State's* burden of proof. The prosecutor admitted that the evidence showed that defendant was not "falling down drunk," but argued that it was not necessary to prove that defendant was "falling down drunk," only that defendant was under the influence of alcohol. The prosecutor painstakingly reviewed all of the evidence, pointing out the many signs of impairment that had been shown. It is noteworthy, too, that the fact that defendant did not take the breath test was never mentioned in rebuttal closing argument.

Having considered the prosecutor's improper remarks in the context of the closing argument as a whole, we find that defendant has failed to persuade us that the verdict would not have been the same had the improper remarks been omitted. We find that the prosecutor's improper remarks were not so prejudicial that real justice was denied. We are convinced that the jury verdict was unaffected by the improper comments. We conclude that defendant was not deprived of a fair trial, that no plain error occurred, and, thus, reversal is not warranted.

For similar reasons, we also find that reversal is not required due to ineffective assistance of counsel. Claims of ineffective assistance of counsel are judged according to the two-prong, performance-prejudice test established in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *People v. Lawton*, 212 Ill. 2d 285, 302 (2004); *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984). Under *Strickland*, a defendant must prove not only that defense counsel's performance fell below an objective standard of reasonableness, but also that this substandard performance caused prejudice by creating a reasonable probability that, but for counsel's errors, the

trial result would have been different. *People v. Evans*, 209 Ill. 2d 194, 219-20 (2004).

In the case at bar we have already determined that the prosecutor's comment's were improper. It follows that defense counsel erred by failing to lodge an objection to the remarks. Nevertheless, even if counsel's failure to object amounts to deficient performance, we do not find that defendant was sufficiently prejudiced by this deficient performance. As we have already concluded, the prosecutor's improper closing remarks did not deny defendant a fair trial. Thus, there is no reasonable probability that, but for counsel's failure to object, the result of the trial would be different. We conclude, therefore, that defendant has not sustained his claim that he received ineffective assistance of counsel and, accordingly, reversal on this basis is not warranted.

## CONCLUSION

For the reasons stated, we affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE FREEMAN, dissenting:

Although I agree with the court that the prosecutor's comments were improper, I cannot agree with the conclusion that a new trial is unwarranted in this case. Therefore, I respectfully dissent.

As the court correctly notes, the error which occurred in this case conflicts with the constitutional principle that a defendant is innocent until proven guilty. 218 Ill. 2d at 140-41. Therefore, in accordance with *California v. Chapman*, the question we must answer in determining if a new trial is required is whether, absent the constitutional error, "it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict." *People v. Smith*, 152 Ill. 2d 229, 269 (1992). After reviewing the evidence in this case and the complained-of argument, it

is not clear to me, beyond a reasonable doubt, that the jury verdict was unaffected by the improper comments.

The impropriety of the comments at issue stems from the fact that they "reasonably could confuse the jury regarding the presumption of innocence and burden of proof." 353 Ill. App. 3d at 960 (Turner, J., dissenting). The effects of juror confusion in cases like this, where this court acknowledges the closeness of the evidence, are not readily discernible. For this reason, I find that it is impossible to say with certainty that the error did not help to sway the jury to a finding of guilty as opposed to a finding of not guilty. The record reveals that defendant called four witnesses who were with him before his arrest, each of whom disputed that defendant displayed the signs of intoxication allegedly observed by Officer Parsons. Defendant testified that he did not cross the center of the road because of intoxication, but rather because he was trying to assess whether he could safely pass the car in front of him. Officer Parsons admitted that a car was in front of defendant at the time he pulled him over, but that it was illegal to pass in that area. Defendant presented the jury with videotapes of the road where the arrest occurred, which established that passing in that area was, in fact, legal. Given the nature of this and the other conflicting testimony adduced at trial, I cannot discount the possibility that the jury could have used the improper remark to tip the balance in favor of the State. In any case, I cannot say with certainty that the jury did not use the improper remark in that way.

Finally, the court's conclusion that the error was harmless does much to dilute its recognition of the impropriety of the remark in the first place. If making such a remark is deemed harmless in a case like this, where the defense has successfully damaged the credibility of the arresting officer—the sole witness for the prosecution—with videotaped evidence, I cannot fathom

under what circumstances this error will ever be deemed harmful enough to warrant a new trial. In my opinion, this kind of result leaves little incentive for the State to avoid making the improper remark in future cases.

Thus, for all of the foregoing reasons, I dissent.

JUSTICE KILBRIDE joins in this dissent.

### Dissent Upon Denial of Rehearing

JUSTICE FREEMAN, dissenting upon denial of rehearing:

I respectfully dissent from the court's order denying rehearing in this case. I write separately in order to explain why I believe rehearing should be granted.

Defendant's position in this matter has been hampered by his procedural default of the issue regarding the prosecutor's remarks. Defendant's attorney did not properly preserve the issue because he neither objected to the comments at trial nor did he include the matter in the posttrial motion. Under our plain error rule, a defaulted issue will only be recognized if the evidence is closely balanced or the error is so serious that it erodes the integrity of the judicial process and undermines the fairness of the defendant's trial. See *People v. Herron*, 215 Ill. 2d 167, 185-86 (2005). The court acknowledged in its opinion that the evidence in this case was close. Thus, defendant has satisfied the first prong of the plain error rule. I also believe that defendant has satisfied the second prong of the rule, as well. As the court itself states, "we feel strongly that the argument here, which implied that defendant might have proven his innocence by submitting to a breath test, *is in conflict with the constitutional principle that a defendant is innocent until proven guilty.*" (Emphasis added.) 218 Ill. 2d at 140-41.

I remind my colleagues that the constitutional

presumption of innocence "lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453, 39 L. Ed. 481, 491, 15 S. Ct. 394, 403 (1895). On this record, we do not, and cannot, know the effect the prosecutor's remarks had on the jury's deliberations. However, I submit that an argument that has the potential to confuse the jury about the presumption of innocence and the State's burden of proof strikes at the core of our criminal jurisprudence and serves to compromise any verdict of guilt rendered by that jury. In this case, it is difficult to have any confidence in the verdict because it was reached by a jury that was given mixed messages on the burden of proof, which in turn negatively impacted upon defendant's constitutional right to the presumption of innocence. Given the critical importance of the presumption of innocence in our criminal justice system, I believe that it is questionable that this kind of error can ever be found harmless, even in a case where the evidence is overwhelming. However, this was not a case of overwhelming evidence. To the contrary, this was a closely balanced case, as the court recognized, and for that reason, it simply is impossible to say, beyond a reasonable doubt, that "the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 711, 87 S. Ct. 824, 828 (1967). My colleagues' continuing failure to recognize these principles establishes a troubling precedent that allows prosecutors to denigrate the constitutional presumption of innocence with impunity.

For these reasons, I would grant rehearing in this case and respectfully dissent from the court's order denying defendant's petition.

JUSTICE KILBRIDE joins in this dissent.