2026 IL App (1st) 240194-U

No. 1-24-0194

Order filed June 18, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 0223701 |
| | ) | |
| COREY TRUMAN, | ) | Honorable |
| | ) | Michael R. Clancy, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Justices Ocasio and Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction where he forfeited his claims that he was deprived of a fair trial where, during closing argument, the State misstated the evidence and impugned defense counsel's character.

¶ 2    Following a jury trial, defendant Corey Truman was found guilty of child pornography (720 ILCS 5/11-20.1(a)(3) (West 2022))[1] and distributing harmful material (720 ILCS 5/11-

_____

[1]Section 11-20.1 has since been amended to change all references from "child pornography" to "child sexual abuse material." 720 ILCS 5/11-20.1(a) (West 2026).

21(b)(1)(A) (West 2022)). The trial court subsequently sentenced him to an aggregate prison term of seven years. The evidence adduced at trial showed that Mr. Truman was engaged in sexual activities with an adult woman when he coerced 12-year-old D.A. to participate by touching the woman while D.A. was on a video telephone call with his friends, R.D. and D.G., who screen-recorded the incident.

¶ 3    On appeal, Mr. Truman contends that he was deprived of his right to a fair trial where the State made improper comments during closing argument that were not based on the evidence and were intended to inflame the passion of the jury. Mr. Truman asserts that the State also made comments that improperly impugned defense counsel's character. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 4                                    I. BACKGROUND

¶ 5                                    A. Trial Testimony

¶ 6    At trial, D.A. testified that in December 2020, he was 12 years old and living with his dad, Arthur A., in Chicago. Arthur shared the apartment with Mr. Truman. There were two bedrooms in the apartment; one belonged to Arthur and the other belonged to Mr. Truman. On December 19, D.A. was in the living room of the apartment playing video games online with his friends R.D. and D.G. The three boys were communicating by FaceTime on their phones while they played. Arthur was asleep in his bedroom when Mr. Truman arrived at the apartment. Mr. Truman came into the living room with a woman that D.A. did not know.

¶ 7    Mr. Truman told D.A. to touch the woman's buttocks, but D.A. ignored him and kept playing video games. Mr. Truman called D.A. a "pussy," and then he and the woman went into Mr. Truman's bedroom and closed the door. The three boys continued playing video games and communicating on FaceTime. Later that night, Mr. Truman came out of his bedroom and asked

D.A. to come into his bedroom. D.A. refused and continued playing video games and talking to his friends on FaceTime. Mr. Truman returned to his bedroom, but 20 minutes later he returned to the living room and asked D.A. to come into his bedroom.

¶ 8    D.A. was "tired" of Mr. Truman bothering him, so he went into his bedroom as requested. Mr. Truman and the woman D.A. had seen earlier started having sex on Mr. Truman's bed and Mr. Truman instructed D.A. to go get his phone. D.A. went back to the living room to get his phone and returned to the bedroom. R.D. and D.G. were still on the FaceTime call. Mr. Truman told D.A. to touch the woman on her breasts and her vagina. D.A. put his phone down next to the bed so that he could touch the woman as Mr. Truman instructed. Mr. Truman picked up D.A.'s phone and pointed it at him so that R.D. and D.G. could see what he was doing. After D.A. touched the woman, Mr. Truman told him not to tell anyone or he would hit him. The State then played two videos of the incident for the jury. The videos depicted D.A. and the woman in Mr. Truman's bedroom.

¶ 9    On cross-examination, D.A. acknowledged that in his video forensic interview about the incident, he did not tell the interviewer that he saw Mr. Truman and the woman having sex. He also acknowledged that he did not tell the interviewer that Mr. Truman told him that he would hit him if he told his dad about the incident.

¶ 10    R.D. and D.G. testified that on the evening of December 19, 2020, they were playing video games and talking on FaceTime with D.A. They saw, over FaceTime, D.A. go into the bedroom with Mr. Truman and the woman. R.D. saw D.A. touch the woman's breasts and buttocks. D.G. saw D.A. touch the woman's breasts and vagina. Mr. Truman was encouraging D.A. to touch the woman. R.D. and D.G. used the screen recording function on their phones to record the FaceTime

call. D.G. sent the video he recorded to D.A. R.D. shared the video that he recorded of the FaceTime call with his friend, G.F.

¶ 11    Rigoberto F. testified that he was the father of G.F. Rigoberto F. worked for the Chicago Police Department and saw the video that R.D. sent to G.F. on G.F.'s phone. On the video, Rigoberto F. saw a woman "fondling" D.A. on the "crotch area." Rigoberto F. filed a police report regarding the video.

¶ 12    Arthur A. testified that, as of December 2020, he had lived with Mr. Truman at their apartment for about six years. Arthur A. did not learn about what happened with D.A. and Mr. Truman on the night of the incident, but learned about it later when his girlfriend found videos on D.A.'s phone. On the videos, Arthur A. saw D.A. touching a woman on her breasts and on her vagina. Arthur A. spoke with D.A. about the videos and also spoke with Mr. Truman. Mr. Truman told Arthur A. that he was "sorry."

¶ 13    Detective Jerad Tim testified that he was a detective with the Chicago Police Department and was assigned to investigate Mr. Truman's case. He observed D.A.'s forensic interview and spoke with D.A.'s parents. He viewed a video of the incident that he obtained from D.A.'s parents. Later, he obtained a warrant and arrested Mr. Truman. Detective Tim and his partner interviewed Mr. Truman at the police station. During the interview, Mr. Truman acknowledged that he picked up D.A.'s phone while FaceTime was on and pointed it at D.A. while D.A. was touching the woman.

¶ 14                                    B. Closing Arguments

¶ 15    Prior to closing arguments, the trial court instructed the jury that:

> "Closing arguments are made by the attorneys to discuss the facts and circumstances in the case. It should be confined to [the] evidence and to reasonable

inferences to be drawn from the evidence. Closing arguments are not evidence and any argument made by the attorneys, which is not based on the evidence, should be disregarded."

As relevant here, the State argued in closing that Mr. Truman pressured D.A. to touch the woman on her breasts and her vagina. He then "memorialized" the incident by taking D.A.'s phone and showing his friends on FaceTime what was happening. The State noted that in order to sustain the charge of child pornography, it was required to prove two propositions. First, that Mr. Truman, with the knowledge of the subject matter, produced a stage play, live performance, film, videotape, depiction by computer or other similar visual portrayal which included a child whom he knew or reasonably should have known to be under the age of 13. The State argued that it had proved this proposition where Mr. Truman knew D.A. was under the age of 13, coerced him to touch the woman, and knowingly live streamed the incident over FaceTime.

¶ 16    The second proposition required the State to show that the child, actually or by simulation, was portrayed as being the object of or otherwise engaged in the act of lewd fondling, touching, or caressing involving another person. The State argued that it had satisfied its burden on this proposition because the video depicted D.A. touching the woman's vagina. The State continued, while playing one of the videos of the incident for the jury:

"Ladies and gentleman, here we have a video. This is clearly a child, a 12-year-old child, caressing her breast, touching her butt. Now we see the adult woman appearing to grind or rub her butt upon the 12-year-old child. He's now touching her butt, as well. This is lewd fondling, this is that touching that the State *** needs to prove."

The State then played another of the videos for the jury.

¶ 17    The State next discussed the charge of distributing harmful materials, which required the State to prove that Mr. Truman knowingly distributed, sent, or caused to be sent, any "harmful material" to a child when Mr. Truman knows or reasonably should know the child was then under the age of 18. The State explained that "harmful material" means material, which, considered by the average person applying contemporary standards and taken as a whole, predominately appeals to a prurient interest that is a shameful or morbid interest in nudity, sex, or excretion. The State argued that the videos in this case were not "art."

> "We know what this is. This is a child, this is a child that's inserting his fingers into a woman. This is a child that's rubbing the breast, smacking the butt, grinding or dry humping this adult woman. This is not material that's art or anything like that."

¶ 18    In response, defense counsel argued, *inter alia*, that Mr. Truman did not intend to distribute the video of the incident because he did not know how FaceTime worked. Defense counsel contended that "these were worldly kids" who had "been around the block a little," and were not "little innocent children." Defense counsel maintained that there was no evidence on the videos that Mr. Truman was instructing or coercing D.A. and there was no evidence that he intended to create or distribute the video of D.A. touching the woman. Defense counsel also argued that Mr. Truman never possessed a video of the incident, so he could not have distributed it as charged. Defense counsel asserted that the State had failed to meet its burden to prove the elements of the charged offenses beyond a reasonable doubt. Defense counsel concluded:

> "I am leaving my client in your hands. I ask that you sign a not guilty verdict not based on sympathy, not based on anything other than the fact that these prosecutors have not proven, beyond a reasonable doubt, that my client is guilty of child pornography and distribution of harmful material.

I am asking you to do the right thing and to sign the right verdict. Thank you."

¶ 19    In rebuttal, the State began:

"Defense counsel just had the audacity to come before you and ask you to do the right thing. When throughout this entire trial at no point did the defendant do the right thing."

The State continued that defense counsel was asking the jury to ignore the testimony of the three children, which, together with the videos, demonstrated that Mr. Truman was guilty beyond a reasonable doubt. The State concluded that the "right thing" to do, based on all the evidence, was to find Mr. Truman guilty.

¶ 20    In instructing the jury prior to deliberations, the court again informed the jury that:

"Closing arguments are made *** by the attorneys to discuss facts and circumstances in the case and should be confined to the evidence and to reasonable inference[s] to be drawn from the evidence. Neither opening statements nor closing arguments are evidence and any statement or argument made by the attorneys which is not based on the evidence should be disregarded."

The jury found Mr. Truman guilty of both charged offenses.

¶ 21    Mr. Truman filed a motion for a new trial, contending, *inter alia*, that the guilty verdict was against the manifest weight of the evidence and that it was fundamentally unfair that the State had "unfettered" access to the videos extracted from the cell phones while defense counsel had only limited access. Mr. Truman also summarily argued that he "was denied effective assistance of counsel." Mr. Truman raised no arguments concerning the State's statements during closing argument. The circuit court denied the motion for new trial and subsequently sentenced Mr. Truman to an aggregate term of imprisonment of seven years; six years for the offense of

production of child pornography and a consecutive one-year term for the offense of distribution of harmful material.

¶ 22    Mr. Truman filed a timely notice of appeal on January 19, 2024. We find that we have jurisdiction to consider the merits of this appeal pursuant to Illinois Supreme Court Rule 606 (eff. Jul. 1, 2017).

¶ 23                                    II. ANALYSIS

¶ 24    On appeal, Mr. Truman contends that he was deprived of a fair trial where the State misstated the facts during closing argument to inflame the passions of the jury and improperly impugned defense counsel's character. Mr. Truman asserts that State's assertions during closing argument that the videos showed D.A. and the woman "grinding" or "dry humping," are not supported by the evidence or reasonable inferences from the evidence. He further maintains that when the State argued that defense counsel had the "audacity" to ask the jury to "do the right thing," that such statement improperly impugned defense counsel's character, thus depriving him of the right to a fair trial.

¶ 25    Mr. Truman acknowledges that he failed to preserve either of these issues for review where he failed to object at trial and failed to raise the issues in a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). He maintains, however, that we may excuse this forfeiture and review both claims of error as plain error or we may review them where defense counsel was ineffective in failing to preserve the errors for review.

¶ 26                      A. Plain Error and Ineffective Assistance

¶ 27    The plain error rule bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances. *People v. Averett*, 237 Ill. 2d 1, 18 (2010). We will apply the plain error rule when:

"(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

The first step in a plain-error analysis is to determine whether an error occurred. *Id.* Where there is no error, there can be no plain error. *People v. Johnson*, 218 Ill. 2d 125, 139 (2005).

¶ 28    Mr. Truman alternatively asserts that his counsel rendered ineffective assistance by failing to preserve these issues for review. Claims of ineffective assistance are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Albanese*, 104 Ill. 2d 504 (1984). "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Cathey*, 2012 IL 111746, ¶ 23 (citing *Strickland*, 466 U.S. at 687). More specifically, a defendant must show that counsel's performance was objectively unreasonable and that there is a " 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35.

¶ 29                                B. Misstating Evidence

¶ 30    We will first address Mr. Truman's contention that the State committed reversible error by arguing facts not in evidence during its closing argument. Specifically, Mr. Truman argues that the State's remarks that the videos showed the woman "grinding" or "dry humping" D.A. were not

supported by the testimony of the witnesses or the videos. Mr. Truman maintains that these comments were intended only to inflame the passions of the jury.

¶ 31     It is well-settled that the State is afforded wide latitude in presenting closing argument, and is entitled to comment on the evidence and reasonable inferences from the evidence. *People v. Green*, 2017 IL App (1st) 152513, ¶ 77; *People v. Alvidrez*, 2014 IL App (1st) 121740, ¶ 26. However, it is improper for the State to misstate the evidence, argue facts not in evidence, or "to do or say anything in argument the only effect of which will be to inflame the passion or arouse the prejudice of the jury against the defendant, without throwing any light on the question for decision." *People v. Smith*, 141 Ill. 2d 40, 60 (1990). A defendant seeking to have his conviction reversed based upon improper remarks during closing argument faces a "substantial burden." *People v. Moore*, 358 Ill. App. 3d 683, 693 (2005). "Improper comments during closing argument can constitute reversible error 'only when they engender substantial prejudice against defendant such that it is impossible to say whether or not a verdict of guilty resulted from those comments.' " *Green*, 2017 IL App (1st) 152513, ¶ 77 (quoting *Moore*, 358 Ill. App. 3d at 693).

¶ 32     Here, we find that the State did not commit a clear or obvious error based on its remarks during closing argument. Mr. Truman asserts that the State's suggestion that the video shows the woman "grinding" or "dry humping" D.A. is not supported by the evidence. Contrary to Mr. Truman's assertion, however, the video shows the naked woman bend over in front of D.A. and she appears to move her hips in a "grinding" motion against him while he smacks her on the buttocks. We recognize that, from the angle of the video, it is difficult to determine if the woman is actually making contact with D.A., but the State's assertion that the video depicts D.A. and the woman grinding, "dry humping," or "rub[bing] her butt" on D.A. is at the very least a reasonable inference based on the video.

¶ 33    Even if we found that the State's comments were improper, we would find that any error was cured by the trial court's instructions to the jury that closing arguments are not evidence. "[I]mproper arguments can be corrected by proper jury instructions, which carry more weight than the arguments of counsel." *People v. Willis*, 409 Ill. App. 3d 804, 814 (2011) (citing *People v. Lawler*, 142 Ill. 2d 548, 564 (1991)). The trial court here instructed the jury both before and after closing argument that closing arguments are not evidence and the jury should disregard any arguments made by the attorneys that were not based on the evidence. We presume, absent evidence to the contrary, that the jurors follow the instructions provided by the trial court. *Green*, 2017 IL App (1st) 152513, ¶ 98.

¶ 34    The record also shows that the State played the videos for the jury during closing argument, and the jury previously viewed the videos during the witnesses' testimonies. Therefore, the jurors saw the evidence and could evaluate the validity of the State's description of the videos in light of their own recollection and perception of the video as the trial court instructed them to do. *People v. Collins*, 106 Ill. 2d 237, 277-78 (1985).

¶ 35    Because we find that no error occurred, there can be no plain error. *People v. Johnson*, 218 Ill. 2d 125, 139 (2005); *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 47. By extension, since an attorney's performance is ineffective only if it falls below an objective standard of reasonableness, counsel cannot be deficient for failing to object to remarks which are not improper. *Johnson*, 218 Ill. 2d at 139. Thus, "the failure of a defendant to show that error occurred at all defeats both an ineffective assistance claim and a claim of error under either prong of the plain error doctrine." *Hensley*, 2014 IL App (1st) 120802, ¶ 47. Accordingly, we find that the State's comments during closing argument were not improper and we honor Mr. Truman's forfeiture of this issue.

¶ 36                          C. Impugning Defense Counsel

¶ 37    Mr. Truman next contends that the State committed reversible error where it impugned defense counsel's character by arguing that defense counsel had the "audacity" to ask the jury to do the right thing. Mr. Truman maintains that this comment implied that counsel acted outside of "acceptable behavior," was unethical, and had a "bad character." Mr. Truman asserts that he was prejudiced by the State's comments such that he was deprived of a fair trial.

¶ 38    As discussed, the State is afforded wide latitude in closing argument and the State's comments during closing argument "will result in reversible error only when they engender substantial prejudice against the defendant to the extent that it is impossible to determine whether the verdict of the jury was caused by the comments or the evidence." (Internal quotation marks omitted.) *People v. Kirchner*, 194 Ill. 2d 502, 549 (2000) (quoting *People v. Marci*, 185 Ill. 2d 1, 62 (1998)). While the State may comment on the defense's theory of the case, it is improper, unless based on some evidence, for the State to suggest that defense counsel "fabricated a defense theory, attempted to free his client through trickery or deception, or suborned perjury." *Id.* (quoting *People v. Jackson*, 182 Ill. 2d 30, 81 (1998)). The State's comments may also constitute error where they are not relevant to the defendant's guilt or innocence and serve only to inflame the jury. *People v. Kidd*, 147 Ill. 2d 510, 542 (1992).

¶ 39    Here, after reviewing the State's remarks in their context, we find that they were not improper. The State did not suggest that defense counsel fabricated a theory or was attempting to free Mr. Truman through trickery or deception or attribute any particular wrongdoing to counsel. *Kirchner*, 194 Ill. 2d at 549. Rather, the State's comments were a response to defense counsel asking the jury to "do the right thing" and find Mr. Truman not guilty. See *People v. Hudson*, 157 Ill. 2d 401, 441 (1993) ("The prosecutor may also respond to comments made by defense counsel

which clearly invite a response"); *People v. Glasper*, 234 Ill. 2d 173, 207 (2009) (finding no error where the State's argument was made in response to counsel's attempt to convince the jury that portions of a witness's testimony were not credible).

¶ 40    We find our supreme court's decision in *Hudson*, 157 Ill. 2d 401 instructive. In *Hudson*, the defendant argued that the State committed error during closing argument when it stated:

> " 'You know, this whole defense of insanity on these facts would be laughable if we weren't dealing with such a serious case, such an important case. This whole theory the defense has concocted to present to you here in court would be laughable. But it's not laughable.' " *Id.* at 442.

The supreme court found that these comments did "not sufficiently refer to defense counsel or attribute any particular wrongdoing to him." *Id.* at 443. "In addition, the prosecutor did not challenge the motives or ethics of defense counsel." *Id.* The court concluded that there was sufficient evidence in the record to support the State's comments that defendant "concocted" his insanity defense, and the comments "were not directed to the defense counsel's integrity." *Id.* at 444; see also *People v. Ligon*, 365 Ill. App. 3d 109, 124 (2006) (finding that the State's use of the words " 'ridiculous' 'sad,' and 'pathetic' " during closing argument were proper comments on the defendant and his theory of the defense rather than an impermissible attack on defense counsel because the comments did not suggest that defense counsel had deliberately lied to the jury or fabricated a defense).

¶ 41    In this case, the State did not challenge the motives or ethics of defense counsel or attribute any particular wrongdoing to counsel. Rather, as noted, the State's comments were a response to defense counsel's argument that the "right thing" to do in this case was find Mr. Truman not guilty

where, in the State's view, there was adequate evidence to find him guilty where he failed to do the "right thing."

¶ 42    We find Mr. Truman's reliance on *People v. Emerson*, 97 Ill. 2d 487 (1983) and *People v. Monroe*, 66 Ill. 2d 317 (1977) unpersuasive where those cases "involved direct references to defense counsel and *repeated accusations of deceit*." (Emphasis added.) *Kirchner*, 194 Ill. 2d at 551. "By contrast, the challenged comments in [this case] were brief and properly directed against" defense counsel's theory of the case. *Id.* Accordingly, we find no error warranting plain error review and find that trial counsel was not ineffective in failing to preserve the issue for review. *Hensley*, 2014 IL App (1st) 120802, ¶ 47. We therefore honor Mr. Truman's forfeiture of this issue.

¶ 43                                    III. CONCLUSION

¶ 44    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 45    Affirmed.