2015 IL App (3d) 130780

Opinion filed October 7, 2015

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2015

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-13-0780 Circuit No. 13-CF-127 |
| JERRELL W. WADE, | ) ) | |
| Defendant-Appellant. | ) ) | Honorable Clark Erickson, Judge, Presiding. |

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-13-0781 Circuit No. 13-CF-128 |
| JONATHAN D. WADE, | ) ) | |
| Defendant-Appellant. | ) ) | Honorable Clark Erickson, Judges, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justices Carter and Holdridge concurred in the judgment and opinion.

**OPINION**

¶ 1     A Kankakee County jury found defendant, Jerrell W. Wade, guilty of attempted murder

and unlawful possession of a weapon by a felon.  The same jury also found defendant, Jonathan

D. Wade, guilty of attempted murder. The court sentenced Jerrell to 39 years' imprisonment for attempted murder and 5 years' imprisonment for unlawful possession of a weapon by a felon, to be served consecutively. The court sentenced Jonathan to 32 years' imprisonment for attempted murder. Defendants' sentences for attempted murder included a mandatory 25-year sentencing enhancement based on the jury's finding that both defendants personally discharged a firearm proximately causing great bodily harm, permanent disability, or permanent disfigurement to the victim.

¶ 2 Defendants appeal, arguing that the court erred by instructing the jury as to whether defendants personally discharged a gun proximately causing great bodily harm, where defendants' indictments did not include such allegations. We affirm.

¶ 3 BACKGROUND

¶ 4 The State issued identical indictments for each defendant for attempted murder and aggravated battery with a firearm. In addition, the State charged Jerrell with unlawful possession of a weapon by a felon. The indictments, in relevant part, state:

> "That on the 8th day of March, 2013, in the County of
>
> Kankakee and the State of Illinois, said [defendants] committed the
>
> offense of ATTEMPT (FIRST DEGREE MURDER), in violation
>
> of Chapter 720, Paragraph 5/8-4(a) of the Illinois Complied
>
> Statutes, in that said [defendants], with the intent to commit the
>
> offense of First Degree Murder, in violation of Chapter 720,
>
> Paragraph 5/9-1(a)(1) of the Illinois Complied Statutes, performed
>
> a substantial step toward the commission of that offense, in that

said [defendants] shot Greg Dismuke about the body with a handgun.

That on the 8th of March, 2013, in the County of Kankakee and the State of Illinois, said [defendants] committed the offense of AGGRAVATED BATTERY WITH A FIREARM, in violation of Chapter 720, Paragraph 5/12-3.05(e)(1) of the Illinois Complied Statutes, in that said [defendants], in committing a battery, in violation of the Illinois Complied Statutes, Chapter 720, Paragraph 5/12-3, knowingly and without legal justification, caused an injury to Greg Dismuke by means of the discharging of a firearm, in that said [defendants] shot Greg Dismuke about the body with a handgun."

¶ 5 Defendants agreed to be tried jointly by one jury. At trial, the State presented the following evidence.

¶ 6 Dismuke went to Kut Above barbershop on Fifth Avenue in Kankakee at approximately 3:30 p.m. The barbershop was located at the end of a strip mall. Defendants shot at Dismuke in the strip mall's parking lot. Five eyewitnesses testified that both Jerrell and Jonathan shot at Dismuke. Two eyewitnesses with partial views saw Jerrell shoot at the victim. One eyewitness testified that only Jerrell shot Dismuke. Another witness with a partial view testified that Jonathan shot at the victim. The police recovered 16 9-millimeter shell casings from the parking lot. Analysis of the shell casings established that they were discharged from two different guns—5 shells from one gun and 11 shells from a different gun.

¶ 7        Dismuke testified that he was not carrying a firearm at the time of the incident.  No eyewitnesses saw Dismuke with a gun.  Eyewitnesses testified that Dismuke moved quickly, weaving in between cars in order to avoid the shooters.  A surveillance video from across the street corroborated this testimony.

¶ 8        Makeisha Bell waited for defendants in a car in the parking lot.  After the shooting, defendants jumped into the car and Bell drove out of the parking lot.  The police picked up defendants shortly thereafter.  Eyewitnesses identified defendants as the shooters in a show-up and from photo arrays.

¶ 9        Dismuke went to the emergency room with multiple gunshot wounds.  Dr. Simon Wu testified that he reviewed Dismuke's medical records; Wu was not the doctor who treated Disumke on the day of the shooting.  Dismuke underwent various treatments at the hospital.  He suffered a fractured left elbow and a fractured left femur.  The doctors placed a rod in his left femur.  Dismuke also suffered a gunshot wound in the suprapubic area.  Wu opined that the injuries Dismuke suffered resulted from being shot.

¶ 10       After discharge from the hospital, Dismuke used a walker and attended physical therapy.  He also received medical care at home.  Dismuke took pain medication, anxiety medication, and had a series of injections to keep his blood from clotting.  A couple weeks later, Dismuke was able to walk on his own.  The court admitted photographs of Dismuke's injuries without objection.

¶ 11       Defendants then presented the following evidence.  Jerrell testified that Bell gave Jonathan and Jerrell a ride to the barbershop.  The barbershop was crowded so Jerrell told his barber that Jonathon and he would wait outside until it was time for their haircuts.  Shortly thereafter, Dismuke exited the barbershop, approached defendants and said, "What's up?"

4

Jerrell asked Dismuke what he meant and Dismuke responded, "You know what it is." Dismuke then pulled out a gun and fired shots at Jerrell.

¶ 12        Jerrell pulled out his gun and fired at Dismuke in self-defense. Dismuke hid behind a truck and Jerrell headed toward Dismuke so that Dismuke could not continue shooting at defendants from behind the truck. Dismuke ran between cars, but continued to shoot at defendants. Jerrell stopped shooting once Dismuke dropped his gun. Jerrell assumed Dismuke dropped the gun after Jerrell shot him. After Jerrell shot Dismuke, Jerrell and Jonathan jumped into Bell's car and left; Jerrell did not think that the police would believe he shot Dismuke in self-defense. Jerrell explained that he had recently been shot at and two of his brothers were killed by gunfire. Jerrell heard that Dismuke shot at him and killed his brothers. He denied shooting at Dismuke in retaliation of the deaths of his brothers. Jerrell testified that Jonathan did not have a gun on the day of the shooting.

¶ 13        Jonathan testified that he did not have a gun during the incident outside the barbershop. He ducked behind Jerrell to avoid the cross-fire. Jonathan did not know that Dismuke was in the barbershop when Jerrell and Jonathan arrived. He did not see Dismuke get shot.

¶ 14        The court provided the jury with instructions. The instruction at issue on appeal stated:

> "Members of the jury, if you have found either or both of the defendants guilty of attempt first degree murder you must then decide whether or not either or both of the defendants (a) personally discharged a firearm in the commission of the offense; and (b) whether or not either or both of the defendants personally discharged a firearm that proximately caused great bodily harm, permanent disability or permanent disfigurement."

¶ 15    The jury found defendants guilty of all charges and found that both defendants discharged a firearm in the commission of the offense and discharged a firearm that proximately caused great bodily harm, permanent disability, or permanent disfigurement.

¶ 16    The court sentenced Jerrell to 39 years' imprisonment for attempted murder. His sentence included the mandatory 25-year sentencing enhancement based on the jury's finding that he personally discharged a firearm that proximately caused bodily harm, permanent disability, or permanent disfigurement. The court merged the aggravated battery with a firearm charge with the attempted murder charge. The court also sentenced Jerrell to five years' imprisonment for the unlawful possession of a weapon by a felon, to be served consecutively with his sentence for attempted murder. The court sentenced Jonathan to 32 years' imprisonment for attempted murder. His sentence also included the mandatory 25-year sentencing enhancement based on the jury's finding that he personally discharged a firearm that proximately caused bodily harm, permanent disability, or permanent disfigurement. Again, the court merged the aggravated battery charge with the attempted murder charge.

¶ 17    Defendants appeal. We affirm.

¶ 18                                    ANALYSIS

¶ 19    Defendants argue that the trial court erred by instructing the jury regarding an uncharged crime. Defendants contend that the indictments charged defendants with "simple" attempted murder, but the court instructed the jury on "aggravated attempt murder." That is, the failure to include the aggravating factors in the indictment precludes the court from instructing on these "elements" of the offense. Defendants concede that they forfeited the issue on appeal; defense counsel failed to object to the jury instruction at trial. *People v. Johnson*, 218 Ill. 2d 125, 138 (2005) (a defendant forfeits an issue on appeal by failing to timely object at trial and raise the

6

issue in a posttrial motion). However, defendants request that we consider their argument under the second prong of plain error. The State argues that the court did not err where the State placed defendants on notice that it would seek the mandatory 25-year sentence enhancement.

¶ 20 A reviewing court may consider a forfeited issue under the plain-error doctrine when "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189 (2010) (citing *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)); *People v. Williams*, 139 Ill. 2d. 1, 14-15 (1990).

¶ 21 The second prong of the plain-error doctrine is equated with structural error. *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009). Structural error is "a systemic error which serves to 'erode the integrity of the judicial process and undermine the fairness of the defendant's trial.' " *Id.* (quoting *People v. Herron*, 215 Ill. 2d 167, 186 (2005)). The Supreme Court has classified error as structural error in a limited class of cases. *Neder v. United States*, 527 U.S. 1, 8 (1999). Structural error includes complete denial of counsel, a biased trial judge, racial discrimination in selection of grand jury, denial of self-representation at trial, denial of public trial, and defective reasonable-doubt instruction. *People v. Thompson*, 238 Ill. 2d 598, 609 (2010) (citing *Washington v. Recuenco*, 548 U.S. 212, 218 n.2 (2006)).

¶ 22 For the following reasons, we find that the trial court did not err by instructing the jury on the sentencing enhancement factors, despite the fact that the attempted murder indictments did not include the aggravating elements.

¶ 23    A defendant has a fundamental right to notice of the elements of the charged offense. *People v. Mimes*, 2014 IL App (1st) 082747-B, ¶ 26 (citing *People v. Rowell*, 229 Ill. 2d 82, 92-93 (2008)).  In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that where a fact, other than a prior conviction, enhances a penalty beyond the statutory maximum, the jury must find such fact beyond a reasonable doubt.  In response to the Court's ruling in *Apprendi*, the General Assembly enacted section 111-3(c-5) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/111-3(c-5) (West 2012)).  *Mimes*, 2014 IL App (1st) 082747-B, ¶ 26.  Section 111-3(c-5) states:

> "(c-5)  Notwithstanding any other provision of law, in all cases in which the imposition of the death penalty is not a possibility, if an alleged fact (other than the fact of a prior conviction) is not an element of an offense but is sought to be used to increase the range of penalties for the offense beyond the statutory maximum that could otherwise be imposed for the offense, the alleged fact must be included in the charging instrument or otherwise provided to the defendant through a written notification before trial, submitted to a trier of fact as an aggravating factor, and proved beyond a reasonable doubt.  Failure to prove the fact beyond a reasonable doubt is not a bar to a conviction for commission of the offense, but is a bar to increasing, based on that fact, the range of penalties for the offense beyond the statutory maximum that could otherwise be imposed for that offense.  Nothing in this subsection (c-5) requires the imposition of a sentence that increases the range of

8

penalties for the offense beyond the statutory maximum that could otherwise be imposed for the offense if the imposition of that sentence is not required by law." 725 ILCS 5/111-3(c-5) (West 2012).

¶ 24 Defendants rely on *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151 (2013), in arguing that the sentencing enhancement factors are elements of the crime that must be included in the indictment. Not so. *Alleyne* simply provided a common sense explanation of that which was implicit in *Apprendi*. *Alleyne* and *Apprendi* both concerned jury instructions, not indictments. *Apprendi*, 530 U.S. at 490; *Alleyne*, 570 U.S. at ___, 133 S. Ct. at 2158. In *Apprendi*, the Court held that a fact is an element of an offense that must be submitted to the trier of fact where such fact increases the punishment above what is otherwise legally proscribed. *Apprendi*, 530 U.S. at 490; *Alleyne*, 570 U.S. at ___, 133 S. Ct. at 2158. In *Alleyne*, the Supreme Court held that facts that increase the mandatory minimum must also be submitted to the trier of fact and found beyond a reasonable doubt. *Id.*

¶ 25 Defendants argue that *Alleyne* creates an aggravated form of attempted murder by finding that facts increasing sentencing ranges are elements of the crime. We disagree. In Illinois, there is no aggravated attempted murder charge. Attempted murder is a single offense. 720 ILCS 5/8-4(c)(1) (West 2012). The Criminal Code of 2012 sets forth a sentencing enhancement factor, but the factors do not create a separate offense. 720 ILCS 5/8-4(c)(D) (West 2012). The Court's holding simply means that a trier of fact must find sentencing enhancement factors beyond a reasonable doubt. *Alleyne*, 570 U.S. at ___, 133 S. Ct. at 2158.

¶ 26 Here, it is undisputed that the court instructed the jury regarding whether the need to find that defendants personally discharged a gun proximately causing great bodily harm. The court

complied with *Alleyne, Apprendi*, and section 111-3. The issue here is whether the court erred by submitting jury instructions concerning the sentencing enhancement factors where the indictment did not include such factors. We find that, although inartfully drafted, the indictments sufficiently notified defendants that the State would seek the 25-year enhancement.

¶ 27     Attempted first-degree murder is a Class X felony. 720 ILCS 5/8-4(c)(1) (West 2012). Section 8-4(c) of the Criminal Code, which describes the penalty faced for attempted first-degree murder, states in relevant part:

> "A person convicted of attempt may be fined or imprisoned or both not to exceed the maximum provided for the offense attempted but, except for an attempt to commit the offense defined in Section 33A-2 of this Code:

> (1) the sentence for attempt to commit first degree murder is the sentence for a Class X felony, except that

> * * *

> (C) an attempt to commit first degree murder during which the person personally discharged a firearm is a Class X felony for which 20 years shall be added to the term of imprisonment imposed by the court;

> (D) an attempt to commit first degree murder during which the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person is a Class X felony for which 25 years or up to a term of natural life shall be added

10

to the term of imprisonment imposed by the court[.]" 720 ILCS 5/8-4(c)(1)(C), (D) (West 2012).

¶ 28    Here, the language of the indictments clearly alleged that defendants personally discharged a weapon. The indictments for the attempted murder charge stated, "defendant shot Greg Dismuke about the body with a handgun." Further, the indictments for the aggravated battery charge stated, "caused injury to Greg Dismuke by means of the discharging of a firearm." It is well established that we will read all counts of a multiple-count indictment as a whole. *People v. Morris*, 135 Ill. 2d 540, 544 (1990). "[E]lements missing from one count of an indictment may be supplied by another count." *Id.* Also, defendants have sufficient notice "if any missing elements can be reasonably inferred from the indictment allegations." *People v. Kennebrew*, 2013 IL 113998, ¶ 53. If missing elements are not fatal to an indictment, the fact that an indictment is missing sentence-increasing elements surely does not necessarily give rise to structural error.

¶ 29    The State also sufficiently notified defendants that it would attempt to prove that defendants "proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another." 720 ILCS 5/8-4(c)(1)(D) (West 2012). The indictments for aggravated battery with a firearm stated that defendants caused Dismuke's injuries. Although the language did not specifically state "proximately caused great bodily harm," the language sufficiently placed defendants on notice that the jury would consider whether defendants caused Dismuke's injuries. Again, one count may supply missing elements for another count within a multiple-count indictment. *Morris*, 135 Ill. 2d at 544. It was also reasonable for defendants to infer from the indictment for aggravated battery that the jury would consider whether defendants caused Dismuke bodily harm. *Kennebrew*, 2013 IL 113998, ¶ 53; *Morris*, 135 Ill. 2d at 544.

11

¶ 30        Moreover, at the arraignment, the court discussed the possible sentencing ranges while defendants and defense counsel were present in court.  The following exchange took place:

"THE COURT:  All of the charges carry with them expanded sentencing ranges.  Normally Counts 1 and 2 would be sentenced as Class X felonies would carry with it a minimum of six if convicted and a maximum of 30.  However, there is the allegation of the use of a firearm and of the defendant personally discharging that firearm and I believe there's a mandatory add-on.

MR. DICKENSON [Prosecutor]:  Yes, sir.

THE COURT:  Is that a 25 to life?  Or is that a 25?

MR. DICKENSON:  It's 25 to life if great bodily harm is inflicted basically.

* * *

THE COURT:  All right.  What that means is that should the evidence reveal that the gunshot wound or wounds caused great bodily harm there would be an automatic add-on to any sentence of a period of time – – period of years between 25 years and life.  Therefore, the minimum sentence, if convicted, if in fact the jury were to find that there was great bodily harm to the victim, the minimum sentence would be 31 years."

Based on such discussion with the court, defendants cannot allege that they did not know that the State would seek the 25-year mandatory sentencing enhancement.

12

¶ 31    Furthermore, pursuant to Illinois Supreme Court Rule 412 (eff. Mar. 1, 2001), the State disclosed to defendants that it planned to call Dr. Simon Wu to testify about Dismuke's injuries and present Dismuke's medical records at trial.  As no surprise to defendants, at trial the State presented overwhelming evidence that the gunshot wounds proximately caused Dismuke great bodily harm.  The State presented photographs of Dismuke's injuries and called Wu to testify regarding Dismuke's injuries and treatment.  The evidence overwhelmingly established that Dismuke suffered a fractured left elbow and left femur and doctors placed a rod in his left femur as a result of the gunshot wounds.  Attempted murder does not require proof that the victim suffered great bodily injury or any injury.  For what purpose, other than seeking the sentencing enhancement, would the State offer such evidence?

¶ 32    The State's failure to include all of the sentence-enhancing elements in the indictment neither denied defendants a fair trial, nor undermined the integrity of the judicial process.  Defendants had ample notice that the State would seek the sentencing enhancement.  Ergo, the court did not err, let alone commit structural error, by instructing the jury regarding whether defendants personally discharged a gun proximately causing great bodily injury.

¶ 33    Although defendants argue that they are not attacking the sufficiency of the indictment, their argument that the indictment charged them with "simple" attempted murder, but the court instructed the jury on "aggravated" attempted murder amounts to an attack on the indictment.  That argument, too, fails.

¶ 34    Where a defendant challenges an indictment prior to trial, the indictment must strictly comply with the requirements set forth in section 111-3.  *People v. DiLorenzo*, 169 Ill. 2d 318, 321-22 (1996); *Mimes*, 2014 IL App (1st) 082747-B, ¶ 33 (citing *People v. Nash*, 173 Ill. 2d 423, 429 (1996)).  When a defendant attacks the sufficiency of an indictment for the first time on

13

appeal, we must determine whether the indictment provided defendant with sufficient specificity as to the crime charge so that defendant may adequately prepare his defense. *DiLorenzo*, 169 Ill. 2d at 322; *People v. Smith*, 337 Ill. App. 3d 819 (2003).

¶ 35 For the reasons stated above, we find that the indictments apprised defendants of the offense charged and allowed defendants to adequately prepare their defense. The court did not err in instructing the jury. Without error there can be no plain error.

¶ 36 <center>CONCLUSION</center>

¶ 37 For the foregoing reasons, the judgment of the circuit court of Kankakee County is affirmed.

¶ 38 Affirmed.