2019 IL App (1st) 170933-U

THIRD DIVISION
December 18, 2019

No. 1-17-0933

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 14 CR 3359 |
| SCOTT KIETA, | ) ) ) | Honorable Colleen A. Hyland, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Ellis and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the judgment of the circuit court of Cook County; the trial court did not abuse its discretion in allowing other-crimes evidence; the alleged instances of improper closing arguments preserved by objection were cured by the trial court and we find no error occurred as to defendant's unpreserved claims of prosecutorial misconduct. Pursuant to Illinois Supreme Court Rule 472, we remand this matter back to the circuit court to allow defendant to file a motion to address alleged errors regarding fines, fees, and costs assessed against him.

¶ 2    Defendant was indicted on one count of predatory criminal sexual assault of a child, 720

ILCS 5/11-1.40 (West 2014), based on the allegation that defendant continuously sexually

assaulted an eight-year old girl between 2006 and 2009 while babysitting her in his trailer after

school.  Prior to trial, the State moved pursuant to section 5-115-7.3 of the Illinois Code of

Criminal Procedure, 725 ILCS 5/5-115-7.3 (West 2014), to allow other crimes evidence that

defendant sexually assaulted his nine-year old niece while watching her in his trailer during the

period between 2009 and 2010. The trial court granted the State's motion allowing the other-

crimes evidence to be admitted to show propensity. Following closing arguments, defendant

moved for a mistrial arguing the State made inappropriate comments during closing arguments.

The trial court denied defendant's motion. The jury returned a guilty verdict and defendant was

sentenced to 23 years in the custody of the Illinois Department of Corrections. Defendant filed a

posttrial motion which the trial court denied. Thereafter, defendant appealed arguing (1) he was

unfairly prejudiced and is entitled to a new trial because the trial court allowed the State to

introduce other-crimes evidence for the purpose of propensity where the other crime was not

sufficiently similar to the charged offense; (2) the State made improper comments and

misstatements of fact and law during closing argument thereby depriving defendant of a fair trial;

and (3) the order assessing fines, fees, and costs should be amended to vacate certain fines and

fees inappropriately assessed against defendant. For the following reasons, we affirm the trial

court's judgment and, pursuant to Illinois Supreme Court Rule 472, remand this matter back to

the circuit court to allow defendant to file a motion to address alleged errors regarding the fines,

fees, and costs assessed against him.

¶ 3                                    BACKGROUND

¶ 4      On February 14, 2014, defendant, Scott Kieta, was indicted on one count of predatory

criminal sexual assault of a child, 720 ILCS 5/11-1.40 (West 2014), based on the allegation that

defendant regularly put his penis into the vagina of E.R. between January 1, 2006 and December

31, 2009 when E.R. was 8 through 11 years old while babysitting her in his trailer after school.

Following a jury trial, defendant was convicted of the charged offense and sentenced to 23 years

in the custody of the Illinois Department of Corrections with credit for 1,172 days served and three years to natural life on mandatory supervised release.

¶ 5    Prior to trial, on May 8, 2015, the State filed a motion to allow other-crimes evidence citing common law grounds and section 5-115-7.3 of the Illinois Code of Criminal Procedure (Code), 725 ILCS 5/5-115-7.3 (West 2014).  Specifically, the State sought to introduce testimony from C.C., defendant's niece, that defendant put his penis into C.C.'s anus, among other sexual acts, while watching C.C. in his trailer during the period between March 21, 2009 and March 20, 2010 when C.C. was nine years old.

¶ 6    Following argument, on August 25, 2015, the trial court ruled that pursuant to section 5-115-7.3 the State could use the testimony of C.C. for purposes of propensity, holding:

> "the proximity in time is very recent and in fact there is an overlap in time between the charged offense and the other crime.
>
> As to the degree of factual similarity, I also find that they are very similar. The ages of the victims are close.  The defendant commits both crimes in his trailer.  The defendant is a babysitter of both victims.  The defendant had both victims remove their clothing and the defendant commits forcible sexual acts on each victim.  It is evident, based upon conducting this balancing test, that the evidence is relevant as well[;] the evidence is more probative than prejudicial, and the State may introduce this evidence for purposes of propensity."

¶ 7    The court did not rule on other theories advanced by the State for admission of the evidence concerning C.C.

¶ 8    Defendant's jury trial commenced on January 25, 2017 at which the following testimony was adduced.  E.R. testified she was born in 1998.  She testified that in 2007, the beginning of

third grade, when she was eight years old, she moved with her father, James R., and her older brother and sister to Sterling Estates trailer park in Justice, Illinois. James R. testified that at the time, he worked at a loading dock in Naperville typically working 12-hour days.

¶ 9     Defendant was James R's next-door neighbor. James R. met defendant when he and his family first moved to Sterling Estates. James R. testified defendant was living with his wife, Ms. Kieta Babich. James R. testified that defendant helped him out with chores around his home and the two became friendly. Because James R. worked long hours, he asked defendant to babysit E.R. when she got home from school.

¶ 10     E.R. testified that after school she would go defendant's trailer and stay there until her father returned from work. E.R. described defendant's trailer as having two bedrooms. The one by the front door was his wife's and the one at the back of the trailer was defendant's room. E.R. testified the back bedroom had Disney princesses and stuffed animals. James R. testified the trailer was about 30 feet in length and had a front room, a middle area, and a back room. He testified he had been in the back room once or twice but could not really describe it from memory. He stated it contained frogs and an iguana or a boa constrictor.

¶ 11     E.R. testified she was in third grade when defendant began babysitting her. E.R. would typically do homework or watch television in defendant's room while at the trailer. One day defendant came into the room, pulled E.R.'s pants down to her ankles and positioned E.R. so she was lying on her back facing defendant. Defendant lowered his pants to his ankles and put his penis in E.R.'s vagina. E.R. testified that defendant moved up and down for what she estimated to be 10 to 20 minutes before stopping and masturbating in the corner of the room. E.R. did not understand what had happened and did not tell anyone because she was frightened.

¶ 12    E.R. testified that defendant assaulted her in this manner every other day for the rest of her third-grade school year, during the summer between third and fourth grade, during E.R.'s fourth grade school year, and during the summer between fourth and fifth grade.  Ms. Kieta Babich was sometimes home when the incidents occurred.  E.R. testified she did not scream or yell for her because E.R. was afraid defendant would do something to her.  She did not tell anyone about what happened because she was scared defendant would come after her.  A certified copy of defendant's birth certificate entered into evidence reflected that defendant would have been in his early to mid-thirties at the time.

¶ 13    C.C. testified about other crimes committed by defendant.  C.C. testified she was born in 2000.  She was defendant's niece.  In 2009, when she was nine-years old, she began to see defendant more often at family events and thought it would be nice to spend more time with him.  E.R. came into contact with C.C. when C.C. would visit defendant.   E.R. and C.C. became best friends.  C.C. testified that she began to spend the night at defendant's trailer and she would also spend time with E.R. when there.  C.C. testified that she did not interact with defendant's wife, Ms. Kieta Babich, because Ms. Kieta Babich either stayed in her room or was away from the home working.  C.C. testified that she would sometimes sleep in defendant's room.  She testified that one time when she was in defendant's room, he told her to remove her clothes and get on her hands and knees on the bed facing away from him.  Defendant then put his penis into C.C.'s anus and moved his body in and out for a period before stopping.  When defendant stopped, defendant and C.C. put their clothes back on and defendant told C.C. that what had happened was normal and not to be concerned.  C.C. did not tell anyone what happened because she was afraid and did not understand what had happened.  Defendant repeated this conduct more than four times but less than ten times.  She also described how defendant once asked her to put her mouth on his

penis. C.C. initially complied, but stopped because she did not want to continue. She testified defendant did not say anything in response and never asked her to do that again. C.C. testified that she stopped going to defendant's house because she fell out of contact with E.R. E.R. testified that in fifth grade she was able to convince her dad that she did not need a babysitter and eventually she and her family moved to another suburb.

¶ 14   E.R. testified she first reported the charged conduct when she was in eighth grade. E.R. realized that what defendant had done to her was wrong after watching "Law & Order: SVU" and learning about sex in health class. She confided in a friend who encouraged E.R. to tell a teacher. E.R. brought a note to her health teacher who brought E.R. to her school's counselor. E.R. then met with the school's resource officer and the officer made a report to Ottawa's Detective Division which was forwarded to the proper authorities.

¶ 15   E.R. underwent a sexual abuse examination performed by Dr. Majorie Fujara on July 8, 2013 at the Chicago Children's Advocacy Center. Dr. Fujara is board certified in general pediatrics and child abuse pediatrics. She testified that she served as both acting chair of the division of child protective services at John H. Stroger Hospital and medical director at the Chicago Children's Advocacy Center. Dr. Fujara testified that some children are brought to her medical clinic in situations where there "isn't an allegation, but maybe the child's behavior is concerning to an adult or there's a medical finding that a general pediatrician sees something that they're concerned about, so they refer the child to us for help as well" and that such pediatrician referrals are not uncommon.

¶ 16   The trial court found Dr. Fujara qualified as an expert in the field of general pediatrics and pediatrics specialized in child sexual abuse and allowed her to testify as an expert in that field and render her expert opinion in that field. Dr. Fujara testified about the sexual abuse

examination she conducted on E.R. and went into detail about her external and internal examination of E.R. Dr. Fujara offered her expert opinion based on that examination that E.R. had an abnormal hymen due to missing hymenal tissue indicative of penetrating trauma consistent with a history of sexual abuse.

¶ 17    Dr. Markus DeGraw testified as defendant's expert witness. Dr. DeGraw is board certified as a general pediatrician as well as in child abuse pediatrics. Dr. DeGraw testified that he served as the director of pediatrics and lead the child protection team at St. John's Providence Children's Hospital in Detroit. He was tendered as an expert in the field of pediatrics and child abuse pediatrics. Specifically, the trial court found Dr. DeGraw qualified to testify as an expert in the field of pediatrics and child abuse pediatrics and allowed him to render his expert opinion in that field. Dr. DeGraw testified that he reviewed Dr. Fujara's report and photographs from E.R.'s sexual abuse examination. He offered his opinion that E.R. had a normal hymen that went all the way around E.R.'s vagina consistent with that of a child of E.R.'s age and stature.

¶ 18    Following witness testimony, the State began closing argument during which she reviewed testimony from the State's witnesses to include E.R.'s testimony. The State argued E.R. was credible and her failure to immediately outcry could be explained by fear and E.R.'s young age when the charged conduct occurred. The State discussed Dr. Fujara's testimony, her specialized experience with child sexual abuse, her opinion that E.R. had been sexually abused, and the sexual abuse examination she conducted of E.R. The State concluded by arguing the evidence proved defendant guilty beyond a reasonable doubt. During argument, the State referred to defendant as a predator several times.

¶ 19    Defense counsel began his closing argument arguing that E.R. should not be believed based on certain evidence to include the August 2007 lease agreement, E.R.'s description of

defendant's trailer, and that E.R. never told anyone despite the fact that the assault occurred daily and Ms. Kieta Babich had, on occasion, been present in the trailer at the time. Defense counsel argued that C.C. and E.R. created this story of sexual abuse by defendant for attention. Defense counsel discussed Dr. Fujara's testimony and argued she made a mistake as to her opinion in this matter. Defense counsel argued Dr. DeGraw was to be believed because he "spends a great deal of time examining kids, consulting with other doctors." Defense counsel argued that it was Dr. DeGraw's job to make sure that only the "right kind of evidence" was presented and that his evidence, which directly contradicted Dr. Fujara's testimony, was the right evidence. Defense counsel argued the jury could not trust the State's witnesses.

¶ 20    During rebuttal argument, the State responded to various arguments made by defense counsel. The State commented on E.R.'s credibility. The State informed the jury that defendant had subpoena power and could have brought in Ms. Kieta Babich as a witness and that Ms. Kieta Babich was afraid of defendant. Defense counsel's objections to these comments were sustained by the trial court. The State also argued that E.R. should not be blamed for not reporting the abuse. The State also commented on Dr. DeGraw's experience and how he arrived at his opinion as well as the conflict with Dr. Fujara's opinion. The State concluded by arguing the jury should find defendant guilty of the charged offense.

¶ 21    After the jury was instructed, defense counsel asked for a mistrial based on certain statements made by the State during rebuttal. The motion was denied and the jury returned a guilty verdict. Thereafter, defendant filed a motion for new trial raising various issues with the State's closing argument and rebuttal which was denied by the trial court after oral argument. Defendant timely filed his appeal and this appeal followed.

¶ 22                                ANALYSIS

¶ 23    On appeal defendant argues (1) he was unfairly prejudiced and is entitled to a new trial because the trial court allowed the State to introduce other crimes evidence for the purpose of propensity where the other crime was not sufficiently similar to the charged offense; (2) the State repeated misstatements of fact and law and other statements solely intended to inflame the passions of the jury against defendant during closing argument thereby depriving him of a fair trial; and (3) the order assessing fines, fees, and costs should be amended to vacate certain fines and fees improperly assessed against defendant.  We affirm defendant's conviction for the reasons set forth below and remand the case back to the trial court pursuant to Illinois Supreme Court Rule 472, Ill. S. Ct. R. 472(e) (eff. May 17, 2019), so defendant may address his alleged errors regarding fines, fees, and costs assessed against him.

¶ 24                                I.  Other-Crimes Evidence

¶ 25    Evidence of other offenses may be admissible to demonstrate "motive, intent, identity, absence of mistake, modus operandi, or any other relevant fact other than propensity." *People v. Vannote*, 2012 IL App (4th) 100798, ¶ 37.  However, evidence of other offenses to demonstrate propensity may be admissible under section 115–7.3 of the Code when a defendant is charged with one of the enumerated sex offenses.  *People v. Donoho*, 204 Ill. 2d 159, 176 (2003); see also *People v. Ward*, 2011 IL 108690, ¶ 25.  "Where other-crimes evidence meets the initial statutory requirements, the evidence is admissible if it is relevant and its probative value is not substantially outweighed by its prejudicial effect."  *Vannote*, 2012 IL App (4th) 100798, ¶ 38.  Section 115-7.3 allows use of other crimes evidence to show propensity where the defendant is accused of predatory criminal sexual assault.  725 ILCS 5/115-7.3 (West 2014).  Defendant argues the other-crimes evidence "should not have been admitted in this case because it was so prejudicial that it substantially outweighed any probative value."  A trial court's decision to admit

other-crimes evidence will not be reversed absent an abuse of discretion. *Donoho*, 204 Ill. 2d at 182. A trial court abuses its discretion where the court's evaluation is "arbitrary, fanciful or unreasonable or where no reasonable man would take the view adopted by the trial court." (Internal quotations omitted.) *Id*. For the following reasons, we disagree with defendant's argument that admission of the other-crimes evidence in this case was an abuse of discretion.

¶ 26    Section 115-7.3 of the Code enables "courts to admit evidence of other crimes to show defendant's propensity to commit sex offenses if the requirements of section 115-7.3 are met." *Donoho*, 204 Ill. 2d at 170, 176. More specifically, section 115-7.3 allows the use of other-crimes evidence to show propensity where the defendant is accused of predatory criminal sexual assault and provides that such evidence "may be admissible (if that evidence is otherwise admissible under the rules of evidence) and may be considered for its bearing on any matter to which it is relevant." *Id*. at 171; see also 725 ILCS 5/115-7.3 (West 2014). The statute sets out three factors which the trial court may consider in weighing the probative value of the evidence against undue prejudice as follows:

"(1) the proximity in time to the charged or predicate offense;

(2) the degree of factual similarity to the charged or predicate offense; or

(3) other relevant facts and circumstances." ILCS 5/115-7.3 (West 2014).

¶ 27    We find the first factor, the proximity in time to the charged offense, favors admissibility. The charged offense was alleged to have occurred between January 1, 2006 and December 31, 2009. The other-crimes conduct against C.C. occurred between March 21, 2009 and March 20, 2010. Accordingly, as the trial court pointed out, not only were the time frames in close proximity, they overlapped by over nine months. See *Donoho*, 204 Ill. 2d at 185 (finding the passage of 12 to 15 years between the charged crime and the other-crimes evidence, standing

alone, was insufficient to compel a finding that the trial court abused its discretion by admitting the other-crimes evidence).

¶ 28     It is in regard to the second factor, the degree of factual similarities to the charged offense, that defendant takes issue with the trial court's analysis.  Defendant argues "[m]ost of the similarities noted by the trial court *** were either incorrect or so general to be of little probative value and were significantly outweighed by critical dissimilarities between the cases."

¶ 29     "[T]o be admissible, other-crimes evidence must have some threshold similarity to the crime charged."  (Internal quotations omitted.)  *Id*.  "As factual similarities increase, so does the relevance, or probative value, of the other-crimes evidence."  *Id*.  "The existence of some difference between the prior offense and the current charge does not defeat admissibility because no two independent crimes are identical."  *Id*.  Factors that are the product of defendant's choice will be viewed as more compelling.  *Id*.  "Looking at the other side of the scale, undue prejudice, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  (Internal quotations omitted.)  *People v. Johnson*, 406 Ill. App. 3d 805, 809 (2010).

¶ 30     The trial court reasoned that the proximity in time overlapped and the instances were "very similar."  As to these factual similarities, the trial court noted the ages of the victims were close, the crimes occurred in defendant's trailer while defendant was babysitting, defendant had both victims remove their clothes and committed a forcible sex act on them.  We acknowledge that the alleged acts with E.R. consisted of vaginal penetration while the acts alleged by C.C. involved anal penetration and oral sex.  However, the abuse was of a similar nature, both victims were prepubescent girls, defendant penetrated both victims with his penis, and the abuse was ongoing rather than an isolated incident.

¶ 31     We are not convinced by defendant's arguments that the trial court was incorrect as to the similarities or that they were so general as to outweigh any probative value.  Defendant argues the fact that the girls were of similar age is of little probative value.  However, where propensity is at issue, we find it very compelling that we are dealing with two instances of prepubescent child sexual assault.

¶ 32     Defendant argues "the trial court incorrectly stated that [defendant] had both E.R. and C.C. remove their clothes."  However, this court does not see defendant's removing E.R.'s pants versus instructing C.C. to take off all of her clothes a significant difference.  Each child's clothes were removed because it was defendant's choice that the undressing occurred.  Nor do we find the difference in the nature of the sexual abuse dispositive in this situation given the other similarities.  See *Donoho,* 204 Ill. 2d at 185 (holding no two crimes are identical, so the existence of some differences does not necessarily defeat admissibility).  Here we note that in both instances, the sexual act was significant, in each instance involving defendant penetrating each child with his penis.  Given these similarities we do not believe the admission of this other-crimes evidence to show defendant's propensity resulted in undue prejudice such that the factfinder would be lured into declaring defendant's guilt on a ground different from proof specific to the offense charged.  *Johnson*, 406 Ill. App. 3d at 809.

¶ 33     Defendant argues similarity as to the location of the abuse and the fact that it occurred while defendant was babysitting is of limited consequence as compared to the different nature of the abuse.  In support of this contention, defendant argues "Illinois courts have downplayed the importance of similarities based on access; instead placing greater importance on similarities as to the nature of the abuse."  Therefore, defendant argues the similarities concerning defendant's

access was not significant where the alleged sexual abuse was different and, as such, the admission of C.C.'s testimony was error.

¶ 34    However, in *Donoho*, the court downplayed the differences between the charged offense and other-crimes evidence to include the defendant's relationship to the abused children; the conduct involving a single instance of abuse versus continuing abuse or two children at the same versus with each child separately; and the defendant's telling the children it was a game versus threatening to ground the children if they told anyone. *Donoho,* 204 Ill. 2d at 185. While noting that no two independent crimes were identical, the *Donoho* court stated it was not convinced these differences, which were the product of access over which the defendant had no control, were significant finding more compelling the factual similarities that were the product of the defendant's choice. *Id.* There, the decision focused on defendant's control over the circumstances. *Id.*

¶ 35    We reject defendant's argument and consider defendant's control over the circumstances which resulted in the differences and similarities between the charged offense and the other other-crimes evidence. Here, we note defendant chose to babysit each girl and while doing so, he further chose to isolate them in his trailer outside the presence of others including his then wife who was, at times, home when the abuse occurred. Additionally, both E.R. and C.C. were subject to continued abuse because defendant had access, a choice he made by agreeing to babysit. Although the *Donoho* court downplayed the significance of access because it was beyond the defendant's ability to control, in this case defendant chose to isolate each child in his trailer where he continued the abuse. Therefore, the other-crimes evidence concerning C.C. was properly admitted though the nature of the acts were not identical.

¶ 36    We are also not persuaded by defendant's citations to *People v. Smith*, 406 Ill. App. 3d 747 (2010), and *Johnson*, 406 Ill. App. 3d at 805.  In *Smith* the defendant was charged with aggravated criminal sexual abuse on the allegation he fondled his granddaughter's vagina outside her clothing when she was eight-years old.  *Id*. at 753-55.  The reviewing court barred defendant's two sisters and three daughters from testifying where the acts took place decades earlier.  There were also factual differences in the incidents.  Defendant's sisters claimed he committed forcible sex upon them while defendant's daughters claimed he digitally penetrated them and/or rubbed their vaginal areas under their clothing.  *Id*. at 753.  The court in *Smith* reasoned the evidence was properly barred based on the factual differences in the significance of the sexual assaults, the 25 to 42 year time gap between the alleged prior crimes and the charged crime, as well as "the very real possibility that evidence of the defendant's sexual abuse of five other female relatives would lead the jury to convict him based upon those other crimes alone."  *Id*.

¶ 37    Here, we point out that the *Smith* court stated "it is important to note that the trial court did not exclude all the other-crimes evidence proffered by the State" having allowed other-crimes evidence of the defendant's sexual abuse of his other granddaughter which allegedly occurred approximately five years earlier, involved defendant's granddaughters in both instances, both girls were of similar age, and the nature of the abuse was the same.  *Id*. at 754-55.  If anything, E.R.'s and C.C.'s similarities are more akin to that of the two granddaughters in *Smith* given the nature of the abuse and close proximity in time.  Therefore, this case is not helpful to defendant.

¶ 38    With respect to *Johnson*, this court found it error, albeit harmless error, for the trial court to admit other-crimes evidence noting general similarities between the prior alleged crime and

the charged offense, but significant dissimilarities between the two sexual assaults of adult females and the trial court's failure to conduct a meaningful analysis of the prejudicial effect of the other-crimes evidence. *Johnson*, 406 Ill. App. 3d at 811-12. The *Johnson* court noted similarities because both victims were abducted while walking past alleys, they were both taken to an abandoned building before being assaulted, the assailant used physical force and threatened to kill both victims if they did not comply with his demands, defendant vaginally and orally penetrated both victims with his penis, and both victims were adults when the assaults occurred. *Id*. at 811. However, there were significant factual differences including the number of perpetrators, the location of the assault, that in one instance the defendant blew cocaine in the victim's face and gave her alcohol during the assault, and anally penetrated one victim. *Id*. In contrast to *Johnson* we find the similarities here more compelling than the differences and we further find that the trial court engaged in a meaningful analysis of the prejudicial effect of the other-crimes evidence.

¶ 39    We cannot say the trial court's decision in allowing the other-crimes evidence in this case was arbitrary, fanciful, or unreasonable or that no reasonable judge would take the view adopted by the trial court. See *Donoho*, 204 Ill. 2d at 182. Therefore, we find no abuse of discretion in admitting the other-crimes evidence in this case.

¶ 40                      II. Propriety of the Prosecutor's Closing Arguments

¶ 41    Defendant next argues he was denied a fair trial because during closing arguments (1) the State "repeatedly" misstated "both the facts and law" and (2) "made several statements *** intended solely to inflame the passions of the jurors against the defense." Defendant points to four categories of alleged offending statements as follows: (a) argument that defense counsel did not subpoena defendant's ex-wife to testify because she was afraid of him; (b) statements

disparaging defense counsel; (c) "commenting on E.R.'s age and describing details of her sexual assault exam[;]" and (d) three additional statements defendant argues were unsupported or misstated the facts. We disagree with defendant.

¶ 42 A number of First District cases have noted a conflict as to the appropriate standard of review to be applied when assessing allegedly improper comments in closing arguments. *People v. Green*, 2017 IL App (1st) 152512, ¶ 78, *People v. Sandifer*, 2016 IL App (1st) 133397, ¶ 54; *Johnson*, 385 Ill. App. 3d at 603. This confusion stems from two Illinois Supreme Court cases: *People v. Wheeler*, 225 Ill. 2d 92, 121 (2007), which applied a *de novo* standard of review and *People v. Blue*, 189 Ill. 2d 99, 128 (2000), which reviewed for an abuse of discretion. In *People v. Cook*, 2018 IL App (1st) 142134, a decision we will follow, the court found no conflict between the two decisions reasoning:

> "[w]hereas a reviewing court applies an abuse of discretion analysis to determinations about the propriety of a prosecutor's remarks during argument (*Blue*, 189 Ill. 2d at 128; *Hudson*, 157 Ill. 2d at 441), a court reviews *de novo* the legal issue of whether a prosecutor's misconduct, like improper remarks during argument, was so egregious that it warrants a new trial (*Wheeler*, 226 Ill. 2d at 121)." *Cook*, 2018 IL App (1st) 142134, ¶ 64.

¶ 43 As set forth in *People v. Glasper*, 234 Ill. 2d 173 (2009):

> "A prosecutor has wide latitude in making a closing argument and is permitted to comment on the evidence and any fair, reasonable inferences it yields. [Citation.] Prosecutors may not argue assumptions or facts not contained in the record. [Citation.] A closing argument must be viewed in its entirety, and the challenged remarks must be viewed in their context. [Citation.] Statements will not be held

- 16 -

improper if they were provoked or invited by the defense counsel's argument." *Id*. at 204.

¶ 44    The prosecutor may "comment on the credibility of witnesses [citation]; denounce the activities of defendants and urge that justice be administered [citation]; [and] highlight inconsistencies in defendant's argument [citation.]" *People v. Morrison*, 137 Ill. App. 3d 171, 184 (1985).  "Arguments that serve only to inflame the jury constitute error." *People v. Mpulamasaka*, 2016 IL App (2d) 130703, ¶ 106.  However, "improper prosecutorial remarks can be cured by instruction to the jury to disregard argument not based on the evidence and to consider instead only the evidence presented." *People v. Rushing*, 192 Ill. App. 3d 444, 444 (1989).

> "In reviewing comments made during closing arguments, this court asks whether or not the comments engender substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from them. [Citation.]  \*\*\*  In other words, if the jury could have reached a contrary verdict had the improper remarks not been made, or we cannot say the improper remarks did not contribute to the conviction, we should grant a new trial.  [Citation.]"  *Sandifer*, 2016 IL App (1st) 133397, ¶ 53.

¶ 45    As an initial matter, defendant acknowledges that the only argument preserved for review was that defense counsel did not subpoena defendant's ex-wife to testify because she was afraid of him.  Defendant argues that the other alleged unpreserved claims of error are reviewable under the plain error doctrine or alternatively stated that "this Court should view defense counsel's failure to preserve all of the improper remarks for review \*\*\* as ineffective assistance."  For the reasons set forth below, we find no reversable error as to defendant's preserved claims.

Additionally, we do not believe defendant's unpreserved claims of error are reviewable under either the plain error doctrine or a claim of ineffective assistance of counsel.

¶ 46          i.  Preserved Objections to Closing Statement Made by the State

¶ 47    As to the preserved claims of error, defendant argues "he was denied a fair trial when the prosecutor, in rebuttal argument, shifted the burden of proof when she twice asserted [defendant] should have subpoenaed [Ms. Kieta Babich] to testify[,]" stated defense "could have asked [Ms. Kita Babich] any number of questions[,]" and "made highly inflammatory comments, without any evidence, of how [Ms. Kieta Babich] did not testify because she was scared of [defendant]."

¶ 48    A conviction will not be overturned if the error was harmless beyond a reasonable doubt and "comments by the prosecution which improperly shift the burden of proof [citations] will only result in a reversal on appeal where the improper remarks resulted in substantial prejudice to the defendant's right to a fair trial.  *People v. Edgecombe*, 317 Ill. App. 3d 615, 622-232 (2000).  "Generally, a trial judge's prompt action in sustaining an objection will be sufficient to cure the error of an improper comment."  *Id*. at 622.

¶ 49    Following the State's first comment that defendant could have subpoenaed Ms. Kieta Babich defense counsel objected and the trial court sustained that objection admonishing the jury "Ladies and gentleman, the burden of proof is on the State, so that objection is sustained."  The State again commented that Ms. Kieta Babich could have been subpoenaed and the trial court sustained defense counsel's objection.

¶ 50    The State then argued "I think [Ms. Kieta Babich] was afraid of him too.  Just putting that out there."  Defense counsel's objection was sustained by the trial court.  Defense counsel noted "There's no evidence to that" and the trial court again sustained the objection and instructed the jury "That will be sustained.  Ladies and gentlemen, you should disregard any statement made by

the attorneys that is not supported by the evidence. That is sustained." Additionally, at the conclusion of argument from both sides, the trial court again instructed the jury to determine the facts only from the evidence, not to consider sympathy or prejudice, and to disregard objections that were sustained. The trial court instructed the jury that closing arguments were not evidence and any statement made by the attorneys not based on evidence should be disregarded. There is no reason to believe that the jury did not follow the trial court's instructions.

¶ 51     In reviewing the comments made by the State during closing arguments, we find the errors, both alone and cumulatively, harmless beyond a reasonable doubt where the trial court cured by instruction to the jury and there was strong evidence to support the jury's verdict. See *Rushing*, 192 Ill. App. 3d at 444; see also *Edgecombe*, 317 Ill. App. 3d at 622 (holding "[g]enerally, a trial judge's prompt action in sustaining an objection will be sufficient to cure the error of an improper comment.").

¶ 52                                    ii. Plain-Error Doctrine

¶ 53    As to his unpreserved claims of error, defendant argues plain-error doctrine should be applied to allow review of those issues. "The plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." (Internal quotations omitted.) *Glasper*, 234 Ill. 2d at 203 quoting *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). Plain error will only be found in exceptional circumstances in which "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." (Internal quotations omitted.) *People v. Sharp*, 391 Ill. App. 3d 947, 957-58 (2009). Defendant argues review is warranted under both prongs of the plain-error doctrine. The burden of persuasion under both prongs remains with defendant. *Herron*,

215 Ill. 2d at 187. "However, before considering whether the plain-error exception applies, we must first determine whether any error occurred." *Glasper*, 234 Ill. 2d at 203-04. Only when it has been determined that an error occurred can we go on to consider whether either prong of the plain-error doctrine has been satisfied. *People v. Matthews*, 2017 IL App (4th) 150911, ¶ 17. As set forth below, here we find no error occurred at all and thus the plain-error exception is inapplicable. *Id.*; see also *People v. Johnson*, 218 Ill. 2d 125, 139 (2005) (holding "there can be no plain error if there is no error").

¶ 54    Defendant argues error as to the following statements made by the State:

> "STATE:  *** And how dare the defense blame [E.R.] for not reporting this. That's just disgusting. She was in the third grade. She was 9, 10, 11 when this was happening, third grade, fourth grade. She's expected to run and tell someone? She doesn't even know what's happening to her.
>
> Sure, when the defendant started raping her, she said no. But you're expected then to go and tell someone? I don't understand what he's doing to me is wrong. To put that onus on a child is just wrong. And I'm not even going to say anything more about it."

Defendant argues "that the prosecutor's specific words were improper and prejudicial" because the argument expressly disparaged defense counsel and misstated the facts. We disagree and find no error.

¶ 55    "The State may challenge the credibility of the defense's theory if evidence supports that challenge, but should not suggest that defense counsel lied or suborned perjury." *People v. Herring*, 2018 IL App (1st) 152067, ¶ 89. In its closing, defense counsel argued, among other theories, that E.R. could not be believed because she did not outcry during the period of the

alleged abuse. However, because the State argued E.R. was not lying, the effect of defense's theory was to place "onus" and "blame" on E.R. for not reporting the abuse. The State did not call defense counsel disgusting as argued by defendant. Instead, the State was criticizing the defense theory. The State did not misstate the burden of proof as to E.R.'s credibility. Nor did the State suggest counsel lied or suborned perjury. Instead, the State characterized defense's theory as disgusting and thus we find no error. See *Herring*, 2018 IL App (1st) 152067, ¶ 89 (finding no error where the State in rebuttal characterized the defense's argument as disgusting).

¶ 56    We do not find comparable the cases cited by defendant wherein the prosecution accused defense counsel in closing argument of unsupported improprieties to include fabrication, deception, and witness abuse and intimidation. See *People v. Abadia*, 328 Ill. App. 3d 669, 680-85 (2001) (reversing the defendant's conviction where the prosecutor commented 22 times that defense counsel was misstating and fabricating trial evidence without basis to include false allegations of witness abuse and intimidation by the defense); see also *People v. Johnson*, 208 Ill. 2d 53, 79-87 (2003) (where the defendant's conviction was reversed due to the cumulative effect of numerous improper comments by the prosecution to include suggesting the defense engaged in deceptive tactics); see also *People v. Emerson*, 97 Ill. 2d 487, 497 (1983) (reversing the defendant's conviction where the prosecutor suggested without evidence that defense counsel "fabricated a defense theory, attempted to free his client through trickery or deception, or suborned perjury"); see also *People v. Thompson*, 313 Ill. App. 3d 510, 514-16 (2000) (where the defendant's conviction was reversed because the prosecutor's closing argument implied defense counsel had conspired with the defendant to obtain witness recantations); see also *People v. Davis*, 287 Ill. App. 3d 46, 57 (1997) (reversing the defendant's conviction where the prosecutor

"improperly showed extreme disdain for the defense" by stating during closing argument that an entered defense exhibit was a worthless piece of paper and crumpled it up).

¶ 57    Defendant also argues error as to the following statements made by the State:

> "STATE:  *** [E.R.] was only eight and nine years old when her innocence was stolen, her childhood destroyed, her purity gone forever, all by the hands of this predator."

Defendant argues, that the State called defendant a predator 11 different times.  Additionally, defendant claims error as to the State's closing statements as follows:

> "STATE:  *** She described to you in detail the type of examination that [E.R.] had to undergo, how humiliating that must have been for a 14-year-old, let alone an adult to endure that.  She conducted an external and internal examination.  They're in a room.  [E.R.] is naked.  She has a paper gown on.  The doctor is in there with a nurse.  She conducts an internal and external exam from head to toe, even her genital areas.  And then she had her lay on her back and her feet in stirrups.  Now she is looking into this 14-year-old little girl's vagina, and she is making an examination at every angle.  She is looking at certain things.  She even described to you exactly what she was looking for.  But that didn't complete her examination to make -- to conclude her findings, if any.  She had [E.R.] get on all fours, the nurse spreading her butt cheeks and her vagina, the outer portion of it so she could get a better vision and view in the inside from different angles.  Very humiliating for a 14-year-old to go through.  For what?"
>
> * * * *

"Now, Dr. DeGraw never saw [E.R.]. He never asked her to take off her clothes, get on all fours, get up on an examination table."

¶ 58    Defendant argues the State "improperly sought to highlight E.R.'s vulnerability to evoke sympathy from the jury and inflame the jury against [defendant]" by focusing on E.R.'s age, referring to defendant as a predator; and describing in detail E.R.'s sexual assault exam. We do not find the statements highlighted by defendant improper.

¶ 59    We also find no error with respect to the State's use of the word predator. We point out that defendant was indicted on predatory criminal sexual assault of a child. *Contra Mpulamasaka*, 2016 IL App (2d) 130703, ¶¶ 3, 107-09 (holding the State's reference to defendant as a predator in closing argument "an attempt to cultivate anger toward defendant" where the defendant was indicted on aggravated criminal sexual assault and criminal sexual assault by the use of force). "Prosecutorial comments based on facts in evidence or reasonable inferences drawn therefrom fall within the bounds of proper argument." *Sandifer*, 2016 IL App (1st) 133397, ¶ 63 (the State's reference to defendant as a rapist and murderer were proper based on reasonable inferences to be drawn from the evidence presented); see also *Jackson*, 2012 IL App (1st) 092833, ¶ 45 (the State's reference to defendant as a rapist and child molester were proper based on reasonable inferences to be drawn from the evidence presented). Here, there was evidence to support the State's argument that defendant committed predatory criminal sexual assault of E.R. as well as his nine-year-old niece.

¶ 60    We find the State's references to E.R.'s age were not improper where defendant was indicted on predatory criminal sexual assault of a child pursuant to section 11-1.40 of the Code. The alleged victim's age is an element of the offense of predatory criminal sexual assault which requires the victim be under 13 years of age. 720 ILCS 5/11-1.40 (West 2014); see also *Jackson*,

2012 IL App (1st) 092833, ¶¶ 39-40 (holding the State's reference to the victim's age was proper where age was a component of the offense of predatory criminal sexual assault with which defendant was charged and thus relevant to the issues at trial). Moreover, "a prosecutor may comment unfavorably on the evil effect of the crime" which in cases of predatory criminal sexual assault of a child undeniably include stolen innocence and purity, a destroyed childhood, and an invasive sexual assault exam. See *People v. Nicholas*, 218 Ill. 2d 104, 121-22 (2005).

¶ 61    Moreover, two experts testified at trial, Dr. Fujara who opined that E.R. had physical manifestations consistent with sexual penetration, assault, and abuse and Dr. DeGraw, who concluded the exact opposite. Here, one distinction between the two experts was the fact that only Dr. Fujara conducted a physical examination of E.R. in reaching her conclusions. Thus, we find no error in the State's detailing this exam which was used by Dr. Fujara to support her conclusions and emphasizing the point again in rebuttal argument where defense counsel argued Dr. Fujara's opinion was a mistake, there was no physical evidence, and noted the steps Dr. DeGraw took to arrive at his conclusion. See *Glasper*, 234 Ill. 2d at 204 (the prosecutor may respond to comments invited by the defense during closing arguments). This court does not find the State's use of the word humiliating to describe [E.R.] experience undergoing the sexual assault examination to exceed the wide latitude afforded prosecutors in commenting on the evidence and drawing inferences thereon nor can we say that the two comments would engender substantial prejudice against defendant.

¶ 62    Defendant argues error as to the following statements made by the State:

   "STATE: *** She was truthful, ladies and gentlemen. She did say

   sometimes the wife was home. But she was in the other bedroom on the other

   side of the trailer. She told you she didn't scream out. She was scared, she told

you, too. She told you she didn't tell her father or anyone at that time. But guess what, it's not uncommon for children who have been molested to immediately make an outcry, if ever at all. She was only eight years old, only nine years old. And he raped her while he was baby-sitting her."

"Now, Dr. DeGraw never saw [E.R.]. He never asked her to take off her clothes, get on all fours, get up on an examination table. And if Dr. DeGraw was so in disagreement with Dr. Fujara's testimony -- we had to hear over and over again how he's a teacher, how he loves to teach, he's teaching, the defendant's attorney. Why didn't he call Dr. Fujara and teach her about why her findings were wrong? It's because he knows Dr. Fujara was going to school him because she is an expert in child sexual abuse, not him."

"And, of course, the defendant had a Disney room in his house. That's what a child predator does. He has a little area where he can entice children in, bring them somewhere where they feel comfortable to go because that's where a child would feel more comfortable where you can go and rape them. That's called grooming. That's where you bring a kid in to feel comfortable so you can commit these types of acts."

¶ 63     Defendant also argues the State "bolstered E.R.'s credibility" by making "the unsupported factual assertion that children commonly do not make an immediate outcry[;]" misrepresented the evidence by stating that Dr. DeGraw was not an expert in child sexual abuse; and indicated the State's "grooming" comments were inflammatory and lacked evidentiary support.

¶ 64    Defendant's argument that the State made "the unsupported factual assertion that children commonly do not make an immediate outcry" is without support.  In fact, the record of the State's comment, though likely misspoken by the State, was "But guess what, it's not uncommon for children who have been molested to immediately make an outcry, if ever at all."  Said another way, the State's comment suggests that it is common for children who have been molested to immediately make an outcry – the opposite of defendant's claim here.  The statement is further confused by the balance of the sentence's contradictory conclusion "if ever at all."

¶ 65    Furthermore, even if the statement had been made as defendant incorrectly argues, and we acknowledge was likely intended by the State, the statement does not constitute error.  The prosecution may "properly decry the evils of crime and its impact on the victims."  *People v. Enoch*, 189 Ill. App. 3d 535, 552 (1989), denounce the activities of the defendant, and comment on the evidence as well as inferences reasonably drawn therefrom.  *Glasper*, 234 Ill. 2d at 204.  There was evidence to support E.R. not making immediate outcry to include her young age at the time of the abuse, her testimony that she did not understand what was happening to her, her testimony that she did not tell anyone because she was scared, the fact that defendant was her babysitter, and defendant was friendly with her father such that he would trust him to look after E.R. and Mrs. Kieta Babich was defendant's wife further complicating an outcry to these individuals.  Additionally, defense counsel commented on C.C.'s failure to immediately outcry and suggested that she should not be believed.  However, C.C. testified that she did not tell anyone because she was afraid.  Furthermore, on cross examination, Dr. Fujara testified that some children are brought to her medical clinic where there "isn't an allegation, but maybe the child's behavior is concerning to an adult or there's a medical finding that a general pediatrician sees that they're concerned about, so they refer the child to us for help as well" and that such

pediatrician referrals are not uncommon. From this testimony a reasonable inference can be drawn that it is not uncommon for children subject to abuse not to make immediate outcry.

¶ 66     We also find the State's comments regarding defendant's grooming and enticing children to be similarly supported by the evidence as well as inferences reasonably drawn therefrom. See *Glasper*, 234 Ill. 2d at 204. "Grooming" is a colloquial expression used to describe the act of deliberately establishing an emotional connection with the child to prepare the child for child abuse. We do not see any connection to the offense of grooming, 720 ILCS 5/11-25, which requires the use of a "device capable of electronic data storage" as argued by defendant. The State specifically defined the term grooming both before and after using the term. The State's comments about grooming and enticing children were fair inferences from the evidence. There was evidence that defendant befriended James R. and gained his trust such that he allowed defendant to babysit E.R. E.R. testified about the sexual abuse taking place in a room in defendant's trailer decorated for a girl with Disney princesses and stuffed animals despite no young girl living there. We disagree with defendant's contention that C.C.'s and James R.'s testimony contradicted E.R.'s testimony with respect to the girl's room in the trailer and note that James R. had testified he had only seen the room once or twice and could not really remember what it looked like.

¶ 67     We also find no error with respect to the State's comment that Dr. Fujara "is an expert in child sexual abuse, not [Dr. DeGraw]." Closing arguments are viewed in their entirety and will not be held improper if invited by defense counsel's argument. *Glasper*, 234 Ill. 2d at 204. A prosecutor is permitted to comment on the evidence and any fair, reasonable inferences it yields. *Id*. Here, the State was responding to defense's characterization of Dr. Fujara's opinion as a mistake where defense counsel argued Dr. DeGraw's "job is to *** make sure that when

evidence is presented, it is the right kind of evidence, and what he told you about was the right kind of evidence."  Moreover, the record supports the State's comment that Dr. Fujara was qualified with special expertise in the area of child sexual abuse while Dr. DeGraw was not. Specifically, the trial court found "[Dr. Fujara] may be qualified as an expert in the field of general pediatrics and pediatrics specialized in child abuse – child sexual abuse and may testify as an expert in that field and render her expert opinion in that field."  In contrast, the trial court found "[Dr. DeGraw] is qualified to testify as an expert in the field of pediatrics and child abuse pediatrics.  He may render his expert opinion in that field."  We also do not find error with respect to the State's questioning "why didn't [Dr. DeGraw] call Dr. Fujara and teach her about why her findings were wrong?"  In closing, defense counsel argued "Dr. DeGraw spends a great deal of time examining kids, consulting with other doctors."  As noted above, defense argued that it was Dr. DeGraw's job to make sure that only the "right kind of evidence" was presented and that his opinion, which directly contradicted Dr. Fujara's conclusion, was the right evidence. We find that defense counsel's argument invited the State's response.  See *Glasper*, 234 Ill. 2d at 204.  Further, nothing in the question suggested that Dr. DeGraw had an obligation to call Dr. Fujara.  In fact, the State answers its own question indicating Dr. DeGraw did not call because Fujara has specialized expertise in the area of child sexual abuse, a qualification which, as we noted above, was more specific than that of Dr. DeGraw.  Moreover, there is no suggestion by the State that such a call would be for improper purposes such as an intent to deter a witness from testifying freely, fully, and truthfully in violation of section 32-4 of the Code.  See 720 ILCS 5/32-4 (West 2018).

¶ 68    Having found no error, we need not consider defendant's argument that "the cumulative effect of the instances of [prosecutorial] misconduct requires reversal ***."  See *Green*, 2017 IL

App (1st) 152513, ¶ 120 (finding no cumulative error where no error at all was found to have occurred).

¶ 69                              iii.  Ineffective Assistance of Counsel

¶ 70    Because we find no error with respect to the above portions of the State's closing which defendant argues were not preserved, we also find defendant cannot establish a claim for ineffective assistance of counsel.  See *People v. Perry*, 224 Ill. 2d 312, 342 (2007) (holding that to prevail on a claim of ineffective assistance of counsel, a defendant must show both that: "counsel's errors were so serious, and his performance so deficient, that he did not function as the 'counsel' guaranteed by the sixth amendment" and that "there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different."); see also *Johnson*, 218 Ill. 2d at 139 (holding "since an attorney's performance is ineffective only if it falls below an objective standard of reasonableness [citation], counsel cannot be deficient if he fails to object to remarks which are not improper.").

¶ 71                              III.  Assessment of Fines, Fees, and Costs

¶ 72    With respect to defendant's claim that the fines and fees order improperly imposed various fines and fees, both the State and defendant agree that pursuant to Illinois Supreme Court Rule 472(e) this court lacks authority to adjudicate this claim raised for the first time on appeal.  Ill. S. Ct. R. 472(e) (eff. May 17, 2019).

¶ 73    Rule 472 delineates the steps a defendant must follow to correct certain sentencing errors. *Id*.  Subsection (e) of Rule 472 specifically addresses criminal cases, such as this, pending on appeal as of March 1, 2019 in which defendant raises for the first time sentencing errors covered under Rule 472 and states as follows:

"(e) In all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 472(e) (eff. May 17, 2019).

¶ 74    Accordingly, we remand to the circuit court for the purpose of allowing defendant to file a motion pursuant to Rule 472. *Id.*

¶ 75                                    CONCLUSION

¶ 76    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed with the exception that we remand to the circuit court to allow defendant to file a motion pursuant to Rule 472 to address his alleged errors regarding fines, fees, and costs assessed against him.

¶ 77    Affirmed and remanded.